### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY HARTER and KEVIN HAYS, on behalf of themselves and all others similarly situated; | ) ) ) ) | |
| *Plaintiffs*; | ) ) | |
| | ) | Case No.: 3:24-cv-00056-SMR-SBJ |
| v. | ) ) | |
| M.A. FORD MFG. CO., INC. dba M.A. FORD MANUFACTURING COMPANY, INC., an Iowa Corporation, | ) ) ) | |
| *Defendant*. | ) ) | |

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

# TABLE OF CONTENTS

I.   INTRODUCTION ……………………………………………………………………3

II.  FACTUAL BACKGROUND…………………………………………………………… 3

III. LEGAL STANDARD………………………..………………………………………… 6

IV.  ARGUMENT OF LAW……………………………………………………………… 7

   A.  Plaintiffs have standing to sue because they have pleaded legally cognizable injuries that
      are traceable to Defendant's conduct………………………………………………...7

      1.  Plaintiffs have established a present injury and an immediate threat of certainly
          impending future injury.    …………………………………………………..7

      2.  Plaintiffs have demonstrated a substantial risk of injury and therefore their
          mitigation efforts constitute a concrete harm………………………………...9

      3.  Diminished value of PII is a cognizable injury…………………………………..11

      4.  Loss of benefit of the bargain is a cognizable injury. …………………………...13

      5.  Emotional distress is a cognizable injury……………………………………...14

      6.  Loss of privacy is a cognizable injury. ………………………………………...16

      7.  Plaintiffs' injuries are fairly traceable to Defendant's conduct. …………………17


   B.  Plaintiffs have sufficiently alleged each of their claims under Rule 12(b)(6)………...…19

      1.  Plaintiffs Have Stated Claims for Negligence and Negligence *Per Se*…………19

          a.  The economic loss doctrine cannot apply when there was no written
              contract between the parties and Plaintiff alleges more than "purely
              economic" loss……………………………………………………………20

          b.  Plaintiff's damages are not "speculative and conclusory"……………..24

          c.  Plaintiffs sufficiently alleged duties arising under the FTC Act ………25

          d.  Defendant fails to show that no common law duty exists……………..27

      2.  Plaintiffs Have Adequately Pleaded an Implied-in-Fact Contract Claim………..28

      3.  Plaintiffs Have Stated Claims for Breach of Fiduciary Duty……………………29

      4.  Plaintiffs Have Sufficiently Stated a Claim for Unjust Enrichment……………..30

      5.  Plaintiffs Have Sufficiently Stated a Claim for Declaratory and Injunctive
          Relief………………………………………………………………………32

V.  CONCLUSION………………………………………………………………………34

## I.    INTRODUCTION

Defendant, M.A. Ford Mfg. Co., Inc. d/b/a M.A. Ford Manufacturing Company, Inc., an Iowa Corporation ("M.A. Ford" or "Defendant") confirmed that it leaked 4,359 of its current and former employees' personal identifying information ("PII"), in a cyberattack that occurred in December 2023 (the "Data Breach"). As a result of the Data Breach, the PII of 4,359 M.A. Ford employees—including Plaintiffs and members of the Class—was targeted, stolen, and exfiltrated by cybercriminals. That PII included their full names and Social Security Numbers.

Plaintiffs Timothy Harter and Kevin Hays' Consolidated Class Action Complaint ("Complaint") seeks redress for the harm caused by this Data Breach. Plaintiffs filed the above-captioned Complaint and allege claims for negligence (Count I), breach of implied contract (Count II), negligence per se (Count III), breach of fiduciary duty (Count IV), unjust enrichment (Count V), and declaratory and injunctive relief (Count VI).

M.A. Ford's challenges to Plaintiffs' specific claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) are unavailing. Simply put, M.A. Ford has not and cannot meet its burden of showing that Plaintiffs lack standing or Plaintiffs are not entitled to relief under their stated claims. The Court should conclude that Plaintiffs' claims survive Rule 12(b)(1) and (6), and deny Defendant's motion in its entirety.

## II.  FACTUAL BACKGROUND

### A.  M.A. Ford Collects the PII of Plaintiffs and the Class

M.A. Ford is a hardware manufacturing company based in Davenport, Iowa. Compl. ¶ 20. To run its business, M.A. Ford requires that employees disclose their PII as a condition of employment, which M.A. Ford then retains. *Id*. ¶ 43. Thus, M.A. Ford collects and maintains the

PII of its current and former employees and applicants—including their names and Social Security numbers. *Id*. ¶¶ 5.

In doing so, M.A. Ford implicitly promises its current and former employees that it will protect their PII. *Id*. ¶¶ 28-30, 32, 89-91, 206.  But despite its promises, M.A. Ford failed to use adequate data security which resulted in the Data Breach. *Id*. ¶¶ 14, 16, 101, 102, 107. In short, M.A. Ford left its employees' PII in a vulnerable state—making their highly sensitive information an easy target for cybercriminals. *See id*. ¶ 7, 115.

### B.  M.A. Ford Breaches Its Duties

Between December 12, 2023 and December 14, 2023, M.A. Ford's data systems were hacked. Compl. ¶ 3. Defendant did not send formal notice of the Data Breach ("Notice Letter") until May 31, 2024.  *Id*. ¶ 4. In its Notice Letter, Defendant stated:

> On December 14, 2023, we discovered unusual activity on our network. We immediately began an investigation, which included working with third-party specialists. Our investigation determined an unknown party accessed portions of our network between December 12, 2023 and December 14, 2023. Therefore, we conducted a review of our network to determine the type of information contained therein and to whom the information related.
>
> On May 16, 2024, we completed our review and began locating address information for individuals. The type of information identified in our review included your name and the following: Social Security Number.

*Id*. ¶ 5.

Thus, M.A. Ford left Plaintiffs and the Class in the dark—thereby preventing them from taking timely action to protect themselves for over *five months* after the Data Breach occurred. The notices revealed little about the Data Breach and attempted to downplay its severity. *See id.*; Compl. Ex. A.  But at the same time, M.A. Ford shifted the burden onto Plaintiffs and Class Members and urged them to monitor their accounts for fraud and place a security freeze on their credit reports. *See id*.

### C. Plaintiffs' Experiences and Injuries

Plaintiffs were former employees of M.A. Ford. Compl. ¶¶ 18, 19, 42, 56. Plaintiffs would not have disclosed their PII to Defendant if they had known M.A. Ford's data security was dangerously inadequate. *Id*. ¶¶ 231. But via the Data Breach, M.A. Ford injured Plaintiffs and exposed them to a continuing risk for identity theft and other harms, including lost time, money, emotional harm, anxiety, and diminished value to their PII. *Id*. ¶¶ 42-67.

In particular, the injuries that Plaintiffs and the Class have suffered include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as M.A. Ford fails to undertake appropriate and adequate measures to protect the Private Information. *Id*. ¶¶ 141-152.

Plaintiff Harter has already noticed several unauthorized entries onto his accounts and has been forced to continue to monitor them for additional misuse. *Id*. ¶ 52. The Data Breach has caused Plaintiffs and the class to experience anxiety and emotional distress. *Id*. ¶ 125. Plaintiffs have expended time and effort to mitigate the harm they have suffered due to the Data Breach. *Id*. ¶¶ 15, 47, 62, 66, 125.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), plaintiffs need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must "accept as true the plaintiff's well pleaded allegations." *Holt v. Quality Egg, L.L.C.*, 777 F. Supp. 2d 1160, 1168 (N.D. Iowa 2011) (quoting *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)). And the court must "construe the complaint liberally in the light most favorable to the plaintiff." *Holt*, 777 F. Supp. 2d at 1168 (quoting *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008)). Thus, "detailed allegations are not required to survive a Rule 12(b)(6) motion to dismiss." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

"When determining standing, the emphasis is on whether the plaintiff 'possesses a legally cognizable interest, or personal stake, in the outcome of the action.'" *Iowa Voter All. v. Black Hawk Cnty.,* 515 F. Supp. 3d 980, 987 (N.D. Iowa 2021) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013)). "Where a party limits its subject matter jurisdiction attack to the face of the complaint, the attack is a 'facial challenge.'" *Iowa Voter All,* 515 F. Supp. 3d at 987 (citing *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013)). "When presented with a facial challenge, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "Those protections include treating the complainant's factual allegations as true and dismissing the action only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief." *Id.* (citing *Osborn*, 918 F.2d at 729 & n.6.).

## IV.    ARGUMENT OF LAW

**C.  Plaintiffs have standing to sue because they have pleaded legally cognizable injuries that are traceable to Defendant's conduct.**

To establish standing, a plaintiff need only show "(1) an actual, concrete and particularized 'injury in fact'—'an invasion of a legally protected interest'; (2) a 'causal connection between the injury and the conduct complained of'; and (3) a likelihood that the injury will be 'redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Allegations of future harm can establish a present "injury-in-fact" for Article III standing if that harm is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Significantly, an injury "need not be actualized" to satisfy Article III. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Instead, a "future injury" can suffice, so long as it is "certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted); *see also Clapper*, 568 U.S. at 414 n.5 (noting that plaintiffs need not "demonstrate that it is literally certain that the harms they identify will come about"). 560–61 (1992). Defendant asserts that Plaintiffs have not shown a concrete injury in fact, or that there is a causal connection between its conduct and Plaintiff's injuries. Defendant is incorrect.

### 1.  Plaintiffs have established a present injury and an immediate threat of certainly impending future injury.

Plaintiffs indisputably allege the imminent risk of future harm as legally cognizable damages for their claims. Plaintiffs have alleged the breach included their names and Social Security Numbers. S*ee e.g.*, Compl. ¶¶ 1, 3, 33, 40. Although Defendant had duties and obligations to protect that Private Information, it has already been published—or will be published

imminently—by cybercriminals on the Dark Web.[1] *Id.* ¶¶ 10, 44-45. Plaintiffs have suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse of their Private Information, (*id.* ¶¶ 53, 66), and as a result, have taken concrete steps to monitor their credit in response to the Data Breach. *Id.* ¶ 52, 62. These allegations are sufficient to establish Article III standing. *See, e.g., Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1359–60 (D. Neb. 2022) ("Here, the sensitive nature of the PII compromised, and the allegations that the plaintiff's PII will be made available on the dark web . . . makes it reasonably plausible that there is a substantial risk that the plaintiff will suffer harm from identity theft in the future"); *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 693 (7th Cir. 2015) (holding that "it is plausible to infer that the plaintiffs have shown a substantial risk of harm" from the data breach, for "[w]hy else would hackers break into a store's database and steal consumers' private information?").

Defendant protests that "Plaintiffs' allegations of increased risk of identity theft and future harm fail to establish sufficient actual imminency and therefore are not concrete injuries under the law." Def.'s Mem. at 6. Defendant cites one case, *Reilly v. Ceridan Corp*, 664 F.3d 38, 43 (3d Cir. 2011), for the proposition that "in the data breach context, other courts have rejected the contention that the 'risk of future harm' is sufficient to show Article III injury-in-fact." Def.'s Mem. at 6, (citing *Reilly* at 43 ("Most courts have held that such plaintiffs lack standing because the harm is too speculative. We agree with the holdings in those cases.")). This is a curious argument. As outlined above, to the extent that Defendant argues the Third Circuit in *Reilly* established that 'risk of future harm' cannot provide Article III standing, the Supreme Court explicitly overruled it. Indeed, Defendant itself concedes that "in limited circumstances the threat of future injury may

---

[1] Indeed, Plaintiff Harter has already noticed several unauthorized entries onto his accounts and has been forced to continue to monitor them for additional misuse. Compl. ¶ 52.

also give rise to a cognizable claim." *Id.* at 5 (citing *TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 425 (2021)).[2] In the data breach context, courts across the country—including courts in the Eighth Circuit—agree. *See e.g. In re: Netgain Tech., LLC*, No. 21-CV-1210, 2022 WL 1810606, at *5 (D. Minn. June 2, 2022) ("Plaintiffs PII and PHI . . . is in the hands of ill-intentioned criminals, and Plaintiffs with credit took concrete steps to monitor their credit in response to the Data Breach . . . as such, the Court finds that Plaintiffs have sufficiently plead a substantial risk of future harm."); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) ("Given the colossal amount of sensitive data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements."). So too here. Plaintiffs have sufficiently pleaded a substantial risk of future harm.

### 2. Plaintiffs have demonstrated a substantial risk of injury and therefore their mitigation efforts constitute a concrete harm.

Recognizing the substantial risk to Plaintiffs' and Class Members' identities, Defendant's Notice Letter actively encouraged Plaintiffs and Class Members "to remain vigilant against incidents of identity theft and fraud by reviewing your credit reports/account statements for suspicious activity and to detect errors." Compl. Ex. A. Despite the evidence of a targeted attack

---

[2] And in any case, the Third Circuit itself clarified that in holding that the *Reilly* plaintiffs lacked standing, "we did not create a bright line rule precluding standing based on the alleged risk of identity theft or fraud. Such a rule would require plaintiffs to wait until they had sustained an actual injury to bring suit . . . Instead, *Reilly* requires consideration of whether an injury is present versus future, and imminent versus hypothetical." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153 (3d Cir. 2022). The Third Circuit erased any doubt that risk of future harm is sufficient for Article III standing: "Following *TransUnion*'s guidance, we hold that in the data breach context, where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms." *Id.* 155-56. Indeed, *Clemens* explicitly outlined that "the plaintiff has alleged a concrete injury" if, for example, "the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services." *Id.* at 156.

by a criminal actor, and the exfiltration of the type of PII recognized to be connected to identity theft, Defendant now claims that Plaintiffs' mitigation efforts were unwarranted. Plaintiffs have been forced to spend time dealing with, responding to, and mitigating the direct consequences of the Data Breach, which includes spending time on the telephone, researching the Data Breach and self-monitoring their accounts. Compl. ¶¶48, 63. This time is lost forever and cannot be recaptured. *Id.* Defendant cannot seriously accuse Plaintiffs of "manufactur[ing] standing through some mitigative efforts to avoid non-imminent future harm" Def. Mem. at 8, when Defendant *itself* told the victims they should take these efforts.

In the Eighth Circuit, standing questions in data breach cases "ultimately turn[ ] on the substance of the allegations before each court"—particularly, the types of data allegedly stolen. *In re SuperValu, Inc.,* 870 F.3d 763, 769 (8th Cir. 2017). Where plaintiffs in a data breach action face a substantial risk of identity theft, they are justified in taking mitigating actions designed to limit or reduce that risk. *See id.* at 771. As the court in *SuperValu* reasoned, because the stolen payment card information in that case did not include "any personally identifying information, such as social security numbers, birth dates, or driver's license numbers," any impending harm was speculative. 870 F.3d at 770. In contrast, courts throughout the Eighth Circuit routinely find standing where— as in this case—PII including social security numbers was stolen. *See, e.g., Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *5 (E.D. Mo. Aug. 3, 2021) (holding that plaintiff who "had PII including her social security number stolen" had standing, and distinguishing *SuperValu*, in which "the stolen data did 'not include any [PII], such as social security numbers'"); *In re: Netgain Tech., LLC, Consumer Data Breach Litig.*, No. 21-CV-1210, 2022 WL 1810606, at *5 (D. Minn. June 2, 2022) ("[T]he factual allegations here are different from the facts alleged in *SuperValu*," because in that case "the stolen card information did not include any PII," whereas

"it is undisputed that the stolen Sensitive Information includes PII."); *Weisenberger*, 597 F. Supp.

3d at 1359 ("The kind of PII that the plaintiff alleged was compromised in the data breach —

Social Security numbers, addresses, birth dates, names, addresses, and email addresses — is the

kind of information, unlike mere credit card information, that can lead to a wide range of identity

fraud."); *Coffey v. OK Foods Inc.*, No. 2:21-CV-02200, 2022 WL 738072, at *3 (W.D. Ark. Mar.

10, 2022) ("Unlike in *in re SuperValu*," where "the stolen information was limited to credit and

debit card information, here the amended complaint pleads stolen social security numbers which

create a higher risk of identity theft.").[3] Plaintiffs and Class members face a substantial risk of

identity theft and were therefore justified in taking mitigating actions designed to limit or reduce

that risk.

### 3. Diminished value of PII is a cognizable injury.

In addition to injuries caused by the increased risk of harm and their mitigation efforts,

Plaintiffs have suffered concrete injury from the lost or diminished value of their PII. *See Finesse*

*Express, LLC v. Total Quality Logistics, LLC*, No. 1:20CV235, 2021 WL 1192521, at *3 (S.D.

Ohio Mar. 30, 2021) ("Courts have held that a loss in value of personal information supports a

finding that a plaintiff has suffered an injury in fact."). Here, Plaintiffs not only make express

diminution of value allegations, Compl. ¶¶ 50, 65, but they also allege the existence of a black

market established for the sale and monetization of Plaintiffs' and Class Members' compromised

Social Security Numbers. *Id.* ¶¶ 73-79.

---

[3] *See also Remijas*, 794 F.3d at 692 (holding that "the aggravation and loss of value of the time needed to set things straight" for individuals alleging fraudulent card charges suffered Article III injury); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) ("[M]itigation expenses satisfy the injury requirements of negligence; otherwise Plaintiffs would face an untenable Catch–22" because "Plaintiffs were required to take reasonable steps to mitigate the consequences of the data breach; they could not passively wait for their identities and money to be stolen."

Defendant argues that "[c]ourts have consistently held allegations of diminution of value of private information does not establish a legally cognizable injury." Def.'s Mem. at 8. There is a reason Defendant cited only one case decided in the last seven years for support; "the growing trend across courts that have considered this issue is to recognize the lost property value of this information." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020). Courts have begun to recognize that "[t]he value of personal information in the digital world is fundamentally different from what might be considered a loss of value in a 'typical' market. The Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy." *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *5 (D. Nev. Sept. 19, 2024). Indeed, "[a]ny . . . potential future misuse of Plaintiffs' PII impairs their ability to participate in the economic marketplace." *Id.*

Contrary to the cases that Defendant cites, the "value of consumer [PII] is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder, but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check." [4] *In re Marriott,* 440 F. Supp. 3d at 462; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) ("[P]laintiffs need not reduce their . . . PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.") (collecting cases); *In re Anthem, Inc. Data Breach Litigation,*15-CMD- 02617-MHK, 2016 WL 3029783, at *15 (N.D. Cal. May 27, 2016) ("The Court also finds that Plaintiffs are not required to plead that there was a market for their PII

---

[4] For example, consumers decide every day whether to exchange their personal information for goods and services "such as wifi access, special access to products, or discounts." *In re Marriott,* 440 F. Supp. 3d at 462. Moreover, "[w]hether someone can obtain a mortgage, credit card, business loan, tax return, or even apply for a job depends on the integrity of their personal identifying information." *Id.*

and that they somehow also intended to sell their own PII.") (citing to *Remijas*, 794 F.3d at 693).

This Court should similarly recognize the inherent value of Plaintiffs' PII.

### 4. Loss of benefit of the bargain is a cognizable injury.

Iowa recognizes loss of the benefit of the bargain as the proper measure of damages for

breach of contract claims. Under Iowa law, "when a contract has been breached the nonbreaching

party is generally entitled to be placed in as good a position as he or she would have occupied had

the contract been performed . . . [t]his type of damages is sometimes referred to as the injured

party's 'expectation interest' or 'benefit of the bargain' damages." *Midland Mut. Life Ins. Co. v.*

*Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998).

Defendant argues that Plaintiffs "have failed to establish the existence of a contract with

M.A. Ford, [and] failed to establish any such contract was breached through fraud."[5] Def.'s Mem.

at 9. But that is not the standard—Plaintiffs are not required to 'establish' either of these things to

have standing: "[a]s we previously have cautioned, "[i]t is crucial . . . not to conflate Article III's

requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not

coextensive . . . [t]o assert standing in a breach-of-contract claim, we do not require facts

establishing 'the legal conclusion of a valid, enforceable contract.'" *Carlsen v. GameStop, Inc.*,

833 F.3d 903, 909 (8th Cir. 2016) (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645

F.3d 954, 460 (8th Cir. 2011)). Instead, "a plaintiff who has 'produced facts indicating it was a

party to a breached contract' has a judicially cognizable interest for standing purposes, regardless

---

[5] For reasons that are unclear, Defendant asserts that Plaintiffs have failed to establish the seven elements for breach of contract due to fraud under Iowa law. Def. Mem. at 9. Setting aside that this is an argument for failure to state a claim under Rule 12(b)(6)—not a lack of standing under Rule 12(b)(1)—this argument is also irrelevant; Plaintiffs do not bring a claim for breach of contract due to fraud. Loss of benefit of the bargain is indeed "a way to measure damages stemming from a breach of contract due to fraud in Iowa," *id.*, but it certainly is not *exclusively* reserved for fraudulent breaches of contract cases. *See generally Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823 (Iowa 1998); *see also* Restatement (Second) of Contracts § 344(a) (1979).

of the merits of the breach alleged." *ABF*, 645 F.3d at 960; *see also Longaker v. Boston Scientific Corp.*, 715 F.3d 658, 664 (8th Cir. 2013) (Bye, J., dissenting) ("[Plaintiff] has stated a personal injury because [Defendant] allegedly breached his employment contract . . .").

Plaintiffs have done so here. Plaintiffs allege they provided their Private Information as a condition of receiving employment with Defendant, and Defendant used that Private Information to facilitate its business and employment. *See e.g.*, Compl. ¶43. Plaintiffs and the Class entered implied contracts with Defendant, by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if its data had been breached and compromised or stolen. *Id.* ¶ 205. Simply put, Plaintiffs were injured because they bargained for necessary data security to protect their PII— which they did not receive. *Id.* Courts, including the Eighth Circuit, have found this damages theory to be viable in data breach cases similar to this one. *See e.g., Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) ("[Plaintiff] alleged that he bargained for and expected protection of his PII, that [defendant] breached the contract when it failed to provide promised reasonable safeguards, and that [plaintiff] suffered actual injury, the diminished value of his bargain. Whatever the merits of [plaintiff's] contract claim, and his related claims for breach of implied contract and unjust enrichment, he has Article III standing to assert them"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *5 (S.D. Cal. May 7, 2020) ("The dissemination of one's personal information can satisfy the damages element of a breach of contract claim"). As a result, this is another form of legally cognizable damages plead by Plaintiffs.

### 5.  Emotional distress is a cognizable injury.

Although the Supreme Court took no position in *TransUnion* on whether emotional or psychological could suffice for Article III purposes, as "[t]he plaintiffs [in *TransUnion*] have not

relied on such a theory of Article III harm," it suggested these harms could be analogized to the tort of intentional infliction of emotional distress. 594 U.S. at 436 n.7. That is precisely the kind of close historical or common-law analogue *TransUnion* instructed would be sufficient for standing. *Id.* at 424. Although the Eighth Circuit cautions that "stress by itself with no physical manifestations," falls short of concrete harm, *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) it has noted that "[i]nfliction of emotional distress and intrusion upon seclusion may be close common-law analogues to [plaintiff's] alleged injury." *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 n.2 (8th Cir. 2023), *see also, e.g., Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (finding false representation in court pleadings of the amount of an individual's debt and the false threat to proceed to trial "create the same risks of mental distress traditionally recognized in unjustifiable-litigation torts and that Congress judged sufficient for standing to sue").

Plaintiffs have alleged "anxiety, sleep disruption, stress, fear, and frustration" as a result of Defendant's Data Breach. Compl. ¶ 51. Other courts have explained that allegations of loss of sleep amount to physical manifestations that make the allegations of emotional distress real, not abstract. *See, e.g., Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168–69 (5th Cir. 2016) ("[T]he number of causes of action in which a person may recover for emotional harm ... supports the notion that emotional harm satisfies the 'injury in fact' requirement of constitutional standing"); *Crowder v. Andreu, Palma, Lavin & Solic, PLLC*, No. 2:19-cv-820-SPC-NPM, 2021 WL 1338767, at *4 (M.D. Fla. Apr. 9, 2021) ("There must be something from which the Court can conclude Crowder's alleged injury is real, and not abstract. Any number of facts might do the trick (e.g., loss of sleep or inability to concentrate)") (Internal citations and quotation marks omitted)); *Rivas v. Midland Funding, LLC*, 842 Fed. App'x 483, 486 (11th Cir. 2021) (loss of sleep and

extreme stress injuries sufficiently tangible and concrete to confer Article III standing); *Waldrop v. LTS Collections Inc.*, 2020 WL 6545772, at *3 (D. Ariz. Nov. 6, 2020) (allegations of fear, anxiety, stress, mental anguish, and loss of sleep, loss of appetite, and headaches sufficient to establish a concrete injury for purposes of determining damages under the FDCPA). As outlined above, Plaintiffs' emotional and psychological injuries are far from the only harms providing standing that Defendant has caused. But they are included in precisely the type of injuries that the law contemplates and addresses. Accordingly, such harms, when accompanied by physical manifestations—such sleep disruption—are another legally cognizable injury. [6]

### 6. Loss of privacy is a cognizable injury.

Plaintiffs also allege that they suffered actual injury from the exposure and theft of their Private Information, which violates their rights to privacy. *See* Compl. ¶¶ 52, 65, 201. Defendant disagrees, arguing that "claims of having suffered an alleged 'privacy injury' fail to confer Article III standing." Def.'s Mem. at 10-11. Defendant's one citation for support—a footnote in a nine-year-old Nevada District Court decision—is unpersuasive. *Id.* at 11 (citing *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015). Six years after *Zappos*, the Supreme Court instructed

---

[6] Defendant spends nearly the entirety of its argument advancing the idea that Plaintiffs lack standing because Iowa law does not allow for emotional damages absent physical injury. Def. Mem. at 10. Setting aside that this is another misplaced *merits* argument, not a *standing* argument—although that may be the general rule, "[a]n exception exists, however, where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm." *Overturff v. Raddatz Funeral Servs., Inc.*, 757 N.W.2d 241, 245 (Iowa 2008) (citing *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990)). In identifying relationships in which negligent conduct is especially likely to cause severe emotional distress, Iowa courts "primarily consider any remoteness between the negligent conduct and the harm to the plaintiff," and negligent conduct is "especially likely to cause severe emotional distress when the plaintiff is in the direct path of the course of conduct arising from the relationship." *Miranda v. Said*, 836 N.W.2d 8, 30 (Iowa 2013). Additionally, courts factor in whether "the injured party personally experiencing the injurer's negligent conduct," and whether the injured party "ha[s] a contract with the injurer." *Millington v. Kuba*, 532 N.W.2d 787, 793 (Iowa 1995). Plaintiffs have alleged both the "close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm," Compl. ¶ 194, and that they had a contract with Defendant. *Id.* ¶¶204-208. Accordingly, these damages are also recoverable under Iowa law.

that to determine whether a plaintiff has suffered a concrete harm, courts must "assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 425.

In *Bohnak v. Marsh & McLennan Cos., Inc.*, the Second Circuit found that standing existed in a data breach case based on the exposure of the plaintiff's private information to unauthorized third parties. 79 F.4th 276, 285 (2d Cir. 2023). "Like the Supreme Court in *TransUnion*," the *Bohnak* court explained, "we have no trouble concluding that [plaintiff's] alleged harm is sufficiently concrete to support her claims for damages . . . the core injury here—exposure of [plaintiff's] private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts." *Id.* at 286 (quoting *TransUnion*, 594 U.S. at 425). It did not matter in *Bohnak* that the plaintiffs were not bringing traditional invasion of privacy tort claims, or even whether governing state law would allow such claims at all. *Id.* Instead, "what matters" under *TransUnion* is simply whether "the intangible harm arising from disclosure of one's PII bears a relationship to an injury with a "close historical or common-law analogue." *Id.* at 285. Indeed, "the weight of post-*TransUnion* authority establishes that [plaintiff's] alleged privacy injury is sufficiently concrete for Article III purposes." *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437 (N.D. Ohio 2023). As a result, Plaintiffs' loss of privacy is a legally cognizable injury.

### 7.  Plaintiffs' injuries are fairly traceable to Defendant's conduct.

To satisfy the traceability requirement, a plaintiff's injuries must "be fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court." *Crain v. Crain*, 72 F.4th 269, 278 (8th Cir. 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). However, "[t]he fairly traceable standard does not equate to a standard of tort causation. Article III standing does not require the defendant's

conduct to be the immediate cause, or even a proximate cause, of the plaintiff's injuries—only that the plaintiff's injuries be *fairly traceable* to the defendant's conduct." *Weisenberger*, 597 F. Supp. 3d at 1359 (emphasis added).

All that is required of Plaintiffs is that they establish a logical link between Defendant's failure to implement data security and Plaintiffs' subsequent injuries—as outlined above, *e.g.*, the imminent risk of future harm, mitigative efforts, loss of value, benefit of the bargain, invasion of privacy, ect. *See, e.g., Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 390 (6th Cir. 2016) ("Although hackers are the direct cause of Plaintiffs' injuries, the hackers were able to access Plaintiffs' data only because [defendant] allegedly failed to secure the sensitive personal information entrusted to its custody. In other words, but for [defendant's] allegedly lax security, the hackers would not have been able to steal Plaintiffs' data. These allegations meet the threshold for Article III traceability, which requires "more than speculative but less than but-for" causation"). Indeed, "at this stage of the litigation, where the plaintiff's burden is relatively modest, it is presumed that the general allegations in a complaint embrace the specific facts that are necessary to support a link between the plaintiff's injury and the defendant's data breach." *Weisenberger*, 597 F. Supp. 3d at 1359 (citing *In re SuperValu, Inc.*, 870 F.3d at 772).[7]

---

[7] According to Defendant, because "data breaches have been ongoing since well before the cyberattack on M.A. Ford, resulting in hundreds of millions of records being exposed," Plaintiffs have therefore "failed to plead facts making it plausible that any alleged risk or future harm they face is traceable to the singular data breach of M.A. Ford." Def. Mem. at 11. This argument misunderstands the concept of 'traceability' in the context of Article III standing. *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228, at *5 (W.D.N.C. July 19, 2021) ("Defendant's argument regarding potential causation by some other data breach that occurred in 2020 is misplaced," because the traceability requirement does not mean a plaintiff must "show to a scientific certainty that defendant . . . caused the precise harm suffered"); *Weisenberger*, 597 F. Supp. 3d at 1359. ("The defendant's argument suggests that the injuries the plaintiff actually experienced might be the result of an unrelated data breach, but that suggestion alone does not render causation due to the defendant's data breach implausible").

Defendant does not challenge that Plaintiffs have satisfied the element of redressability, it only repeats its tired and erroneous refrain that Plaintiffs have failed to demonstrate an injury in fact. Def. Mem. at 12. Regardless, courts across the country reject the idea that injuries arising from data breaches are not redressable. *See In re Zappos.com Customer Data Sec. Breach Litig.*, 888 F.3d 1020, 1030 (9th Cir. 2018) ("[t]he injury from the risk of identity theft is also redressable by relief that could be obtained through this litigation. If Plaintiffs succeed on the merits, any proven injury could be compensated through damages."); *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1211 (S.D. Fla. 2022) ("Plaintiffs' alleged injuries constitute injuries in fact sufficient to satisfy claims for damages, and no further discussion of damages is warranted"); *Dieffenbach v. Barnes & Noble,Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing").

### D.  Plaintiffs have sufficiently alleged each of their claims under Rule 12(b)(6)

#### 1.  Plaintiffs have stated claims for Negligence and Negligence *Per Se*

Businesses that collect PII have a duty to protect it using "reasonable" means, and violating that duty is not without consequence. Although the Iowa Supreme Court has yet to recognize the duty, the Northern District of Iowa has predicted it would recognize such a duty: "I predict that the Iowa Supreme Court would conclude that a party collecting private data from its employees has a duty to take reasonable measures to safeguard that data." *Mohsen v. Veridian Credit Union*, No. C23-2048-LTS-KEM, 2024 WL 2080177, at *4 (N.D. Iowa May 9, 2024) (finding plaintiff plausibly alleged the defendant owed him and class members a duty of reasonable care to protect their PII from a data breach).

Defendant does not seriously dispute that the duty exists and applies here, lacking any authority countering *Moshen's* logic on that ground. *See* Def.'s Mem. 18. Instead, Defendant tries to avoid liability by invoking the economic loss doctrine, claiming its breach cannot have caused any harm, and denying that its duty is also defined under the FTC Act ("FTCA"). Each contention fails.

> **a. The economic loss doctrine cannot apply when there was no written contract between the parties and Plaintiffs allege more than "purely economic" losses.**

Defendant misapplies the economic loss doctrine because it misunderstands the doctrine's scope in two ways. ***First***, the doctrine cannot apply unless there is a written contract at issue between the parties. This is because the seeks to maintain the boundary between contract and tort law, "prevent[ing] the 'tortification of contract law' by precluding parties from recovering from one another in tort for risks that they 'can be presumed to have allocated between themselves in their contract.'" *Floyd Cty. Mut. Ins. Ass'n v. CNH Indus. Am. LLC*, 18 F.4th 1024, 1026 (8th Cir. 2021) (citing *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011)). Indeed, the doctrine "was conceived to prevent litigants *with contract claims* from litigating them inappropriately as tort claims." *Van Sickle Constr. Co. v. Wachovia Commer. Mortg., Inc.*, 783 N.W.2d 684, 693 (Iowa 2010) (emphasis added); *See also Annett*, 801 N.W.2d at 503 ("When two parties have a contractual relationship, the [doctrine] prevents one party from bringing a negligence action against the other over the first party's defeated expectations—a subject matter the parties can be presumed to have allocated between themselves in their contract"). In other words, there is no reason to apply the doctrine if there is no contract at issue.

To be sure, Iowa, like other states, has extended the doctrine to apply even if the parties are not in "direct contractual privity;" that is, their contract relationship exists in a "chain of contractual

relationships" that can "be traced from plaintiff to defendant." *Cont'l W. Ins. Co. v. Cont'l Fire Sprinkler Co.*, No. 4:10-CV-00584-TJS, 2013 U.S. Dist. LEXIS 192065, at *9 (S.D. Iowa Mar. 27, 2013) See, e.g., *Mech., Inc. v. Venture Elec. Contractors, Inc.*, 2020 WI App 23, ¶17, 392 Wis. 2d 319, 327, 944 N.W.2d 1, 5 ("Under Wisconsin law, the economic loss doctrine applies when the claimant seeks economic loss that arises from duties under interrelated contracts, even where there is no direct two-party contractual relationship"). For instance, in construction disputes, an owner cannot sue a subcontractor in tort even if the owner has no "direct" relationship with the subcontractor, as the owner and subcontractor are within a "consensual network of contracts" with the contractor. *Annett*, 801 N.W.2d at 504. But even then, there is a contract at issue that allocates the risk among parties, obviating the need to invoke tort claims.

In other words, the doctrine is not a freewheeling rule to be applied whenever a litigant alleges negligence and economic loss; were that the case the doctrine would eliminate some torts from existence. *Van Sickle Constr. Co. v. Wachovia Commer. Mortg., Inc.*, 783 N.W.2d 684, 693 (Iowa 2010) (declining to apply the rule when "[a]pplication of the economic loss doctrine in negligent misrepresentation cases would essentially eliminate the tort"). As a result, Defendant distorts the rule when it says, "the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." Def.'s Br. 14 (citing, in part, *Annett*, 801 N.W.2d at 503). Rather, Iowa courts have repeatedly held that the loss alleged—"purely economic" or not—does not impact whether the rule applies; what matters is whether the loss stems from a contract: "Ultimately, 'the line to be drawn is one between tort and contract rather than between physical harm and economic loss.'" *S. Ins. Co. v. CJG Enters.*, No. 3:15-cv-00131-RGE-SBJ, 2017 U.S. Dist. LEXIS 129516, at *8-9 (S.D. Iowa May 12, 2017) (citing and quoting *Nelson v. Todd's, Ltd.*,

426 N.W.2d 120, 125 (Iowa 1988)). For that reason, it is not enough for plaintiff to allege negligence and "economic loss" for the rule to apply; again, there must be a contract.

Defendant somewhat acknowledges these principles in its brief, recognizing the "rationale for the economic loss rule is to limit recovery for purely economic losses that *may* arise from a breach of contract." Def.'s Mem. at 14 (emphasis in original). But it misses the mark when it broadens the rule to encompass implied contract claims. *Id*. As courts hold, an implied "contract" claim is "somewhat of a misnomer, as the obligation of quasi contracts or implied-in-law contracts is created by law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." *Atwell v. Mehrhoff*, 977 N.W.2d 507 (Iowa Ct. App. 2022) (citation and quotations omitted). And the reason is that an implied contract claim is based in equity, more like "unjust enrichment," "quantum meruit," or restitution. *Id*; *AT&T Corp. v. Aventure Commun. Tech., LLC*, No. 4:07-CV-00043-JEG, 2018 U.S. Dist. LEXIS 156309, at *16 n.5 (S.D. Iowa July 11, 2018). For that reason, courts explain "it would be better not to use the word 'contract' at all." *Iowa Waste Sys. v. Buchanan Cty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) (citing Corbin on Contracts § 1:20, at 64).

Indeed, Defendant fails to identify a case holding that the economic loss rule bars tort claims when plaintiff alleges an implied contract—because none exist. To the contrary, the only authority on point holds the opposite. *Westco Agronomy Co. v. Wollesen*, 2013 Iowa Dist. LEXIS 14 ("Courts have held that application of the economic loss doctrine is inappropriate when claims are based on an implied-in-law contract theory") (citing *Annett*, 801 N.W.2d at 503). And although Defendant cites *Moshen* in support, *Moshen* never confronted the issue. 2024 WL 2080177, at *6. Instead, it applied the economic loss doctrine without analyzing whether an express contract existed between the parties, an error this Court should decline to repeat. *Id*.

***Second***, even if the doctrine could apply to cases without an alleged contract (it cannot), it still would not apply here because Plaintiff's losses are not "purely economic." As above, "[p]urely economic losses usually result from the breach of a contract[.]" *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 651 (Iowa Ct. App. 1996). This logic stems from the doctrine's roots in products liability cases holding that while a person can assert tort theories to recovery the losses a product causes *them*, they cannot demand the "[e]conomic losses to the product itself[.]" *Id*. Put another way, the doctrine limits a litigant's recovery to what they paid or agreed to under contract, unless the product or service injured the litigant or their property.

Under this framework, courts hold that data breach victims can recover losses like lost time emotional injuries following a breach because they are not "solely economic." *Johnson v. Nice Pak Prods.*, No. 1:23-cv-01734-JMS-CSW, 2024 U.S. Dist. LEXIS 99754, at 16 (S.D. Ind. June 5, 2024) ("at least some of the harms experienced by the Plaintiffs are not solely economic, such as lost time and worry"); *Stasi v. Immediata Health Grp. Corp.*, 501 F.Supp.3d 898, 913 (S.D. Cal. 2020) ("[T]ime spent responding to a data breach is a non-economic injury, that when alleged to support a negligence claim, defeats an economic loss doctrine argument"); *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2021 U.S. Dist. LEXIS 18799, at 10 (N.D. Cal. Jan. 30, 2021) ("Plaintiffs allege they lost time responding to the breach and suffered from increased anxiety. They do not allege purely economic losses and the economic loss rule therefore does not apply"); *In re Ambry Genetics Data Breach Litig.*, No. SACV 20-00791-CJC (KESx), 567 F. Supp. 3d 1130, 2021 U.S. Dist. LEXIS 204358, 2021 WL 4891610, at 4 (C.D. Cal. Oct. 18, 2021) ("purely economic losses" do not include alleged injuries of privacy, anxiety, concern, unease, and lost time); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-

KSC, 2020 U.S. Dist. LEXIS 80736, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) (same); see also *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (same).

While Plaintiff acknowledges *Moshen* found that "diminution of value" and emotional injuries are "economic" in nature, the court's decision conflicts with other courts that have held a loss is not "purely economic" unless the loss is tied to a contract. *See Annett*, 801 N.W.2d at 505 ("With respect to purely economic loss, it is ordinarily fair to bind the plaintiff by the *terms of the agreement* to which the plaintiff assented") (emphasis added). That aside, *Moshen* never considered whether lost time is "purely economic" in nature, nor are there any cases holding that it is under Iowa law. 2024 WL 2080177, at *6-7. As above, courts considering the issue decline to because "economic loss" under the doctrine is better understood as "commercial loss" stemming from a contract. *Nice Pak Prods.*, 2024 U.S. Dist. LEXIS 99754, at *16 (noting "the term 'economic loss' is a misnomer") (quotations and citations omitted).

As a result, the Court should decline to expand the doctrine to cover Plaintiff's claims, as they fall outside the doctrine's scope.

### b. Plaintiffs' damages are not "speculative and conclusory"

As with Plaintiff's standing to sue, his claim for damages is neither "speculative" nor "conclusory." The "question whether [plaintiff] has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). That is, "[t]o say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available" See also *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). In other words, if Plaintiff establishes standing, then it is likely they have established the damages element underlying their claim.

Defendant opposes this reasoning claiming Plaintiff's allegations are only "hypothetical" and "speculative." Def.'s Br. 16–17. But Defendant misunderstands Plaintiff's pleadings. Plaintiff alleges he "*has* and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach." Compl. ¶ 48. That is not to mention his increased risk for identity theft and "diminution of value" of his PII. *Id*. ¶ 50. Thus, Plaintiff is not establishing harm with what will happen, but what has. And courts recognize these losses as damages. *Perry v. Bay & Bay Transp. Servs.*, 650 F. Supp. 3d 743, 756 (D. Minn. 2023) ("lost time and resources mitigating the effects of the data breach… constitutes a cognizable injury"); *Thomas v. Pawn Am. Minn., LLC* (*In re Pawn Am. Consumer Data Breach Litig.*), No. 21-CV-2554 (PJS/JFD), 2022 U.S. Dist. LEXIS 140107, at *10 (D. Minn. Aug. 8, 2022) ("For more than a century, American courts have recognized damages as a remedy for emotional distress caused by invasions of privacy and similar torts"); *Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-cv-20020F1, 2023 U.S. Dist. LEXIS 196396, at 19 (W.D. Ark. Nov. 1, 2023) ("the Court joins other district courts in this circuit finding similar allegations are sufficient to plead damages in the data breach context") (collecting cases).

At all stages, the damage award Plaintiff seeks "need only bear a 'reasonable relationship to the loss suffered' to be sustained." *Jackson v. Roger*, 507 N.W.2d 585, 589 (Iowa Ct. App. 1993). And at this stage, Plaintiff need only allege damages to support "a facially plausible claim for relief." *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024). As a result, the Court should find Plaintiff's allegations suffice to state damages at the pleading stage.

### c.  Plaintiffs sufficiently alleged duties arising under the FTC Act

25

The FTCA was designed to protect people like Plaintiff, including his PII. The FTC requires businesses to safeguard the PII they collect and "has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA") 15 U.S.C. § 45." Compl. ¶ 63. The "reasonable" measures the FTC expects include "maintaining information no longer than necessary for a transaction; limiting access to sensitive data; requiring complex passwords to be used on networks; using industry-tested methods for security; monitoring for suspicions activity on the network; and verifying that third-party service providers have implemented reasonable security measures." *Hall v. Centerspace, LP*, No. 22-cv-2028 (KMM/DJF), 2023 U.S. Dist. LEXIS 83438, at *5 (D. Minn. May 12, 2023). Indeed, the FTC's regulations for these measures are located at Plaintiff alleges Defendant breached its duty under the FTCA by failing to implement those measures. Compl. ¶¶ 59-62.

Courts across the country hold allegations like these suffice to establish a negligence per se claim. *Sullivan v. YES Energy Mgmt.*, No. GJH-22-0418, 2022 U.S. Dist. LEXIS 180586, at 25 (D. Md. Sep. 30, 2022) (finding the FTCA can establish a duty under a per se theory); *See In re Equifax, Inc., Customer Data Security Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019) (same); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 U.S. Dist. LEXIS 131140, 2018 WL 2128441, at 14 (N.D. Ga. Mar. 5, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 U.S. Dist. LEXIS 65111, 2016 WL 2897520, at *4 (N.D. Ga. May 17, 2016) (same). These decisions are consistent with Iowa law, as it allows a statute to establish a duty when it "provides a rule of conduct specifically designed for the safety and protection of a certain class of persons[.]" *Gerard v. City of N. Liberty*, 908 N.W.2d 541 (Iowa Ct. App. 2017).

Defendant resists this logic claiming the FTCA lacks "specificity" and a "private right." Neither argument has merit. First, the FTCA outlines how businesses should comply with its terms, relating those terms to data security measures and specifying those businesses should follow. And when they fail to, the FTC enforces ss 5 through enforcement actions. And second, whether the FTCA affords a private right does not affect whether it can create a duty under a per se theory. In Iowa, even "the violation of a municipal safety ordinance can be negligence per se." *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 446 (Iowa 2016). Litigants have no "private right" to sue under ordinances, yet that does not limit their right to rely on the statute in a per se claim. So too with per se claims relying on OSHA violations: "it is well established that if a statute or regulation such as an OSHA standard provides a rule of conduct specifically designed for the safety and protection of a certain class of persons, and a person within that class receives injuries as a proximate result of a violation of the statute or regulation, the injuries would be actionable, as . . . negligence per se." *Wiersgalla v. Garrett*, 486 N.W.2d 290, 292 (Iowa 1992) (citation and quotations omitted). As a result, there are no grounds to dismiss Plaintiff's per se claim because the FTCA lacks "private right." As a result, the Court should deny Defendant's motion on this ground.

### d.   Defendant fails to show that no common law duty exists

In support of its position that Defendant owes no common law duty to Plaintiffs to protect their PII, Defendant fails to direct the Court to a single Iowa case establishing that, as a matter of law, an employer like M.A. Ford does not owe a duty to safeguard the PII of its employees from unauthorized disclosure.  On the contrary, earlier this year, the Northern District of Iowa noted that while the Iowa Supreme Court has not directly addressed this issue, it predicted the Iowa Supreme Court "would conclude that a party collecting private data from its customers has a duty to take reasonable measures to safeguard that data." *Mohsen,* 2024 WL 2080177, at *4 (finding that

Plaintiffs adequately alleged a common law duty in a data breach case). This Court should similarly find that a duty exists.

### 2. Plaintiffs Have Adequately Pleaded an Implied-in-Fact Contract Claim

M.A. Ford next moves to dismiss Plaintiffs' claim for breach of implied contract. "In modern contract law, there have traditionally been two types of contracts—express and implied. *Iowa Waste Sys., Inc. v. Buchanan Cnty*., 617 N.W.2d 23, 29 (Iowa Ct. App. 2000) (citing *Irons v. Community State Bank,* 461 N.W.2d 849, 855 (Iowa App.1990)). "When the parties manifest their agreement by words, the contract is said to be express [but] [w]hen there "is merely a tacit promise, one that is inferred in whole or in part from expressions other than words on the part of the promisor' it is said to be implied in fact." *Id*. (quoting *Corbin on Contracts* § 1.18, at 51). "While an express contract is based on words, an implied contract is based on conduct." *Larew v. Hope L. Firm, P.L.C.,* 977 N.W.2d 47, 56–57 (Iowa 2022), *reh'g denied* (July 12, 2022) (quoting *McKee v. Isle of Capri Casinos, Inc.,* 864 N.W.2d 518, 526 (Iowa 2015)).

M.A. Ford argues that they never assented to a contract with Plaintiffs and that there was no exchange between the two parties for Defendant to safeguard Plaintiffs' Private Information. Def's Mem. at 19-20. M.A. Ford argues that their Privacy Policy does not bind them to any implied contract, stating "[g]eneral statements of compliance are not tantamount to a binding contract." *Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763, 780 (Iowa 2020). The use of *Petro* is misguided as it attempts to frame M.A. Ford's Privacy Policy as merely a notice – something which it is not. Further, M.A. Ford attempts to frame its own Privacy Policy as "akin to a poster on the wall announcing compliance with law." Def's Mem. at 20. This argument misconstrues Plaintiffs' implied contract theory. Plaintiffs allege that by entrusting Defendant with their PII, they entered implied contracts by which Defendant agreed to safeguard and protect such

information. Compl. ¶ 205. The court in *Mohsen* found these allegations were sufficient to state an implied contract claim in the data breach context. See 2024 WL2080177 at *8 ("Mohsen and proposed class members did not provide the PII gratuitously but rather expected that it would be protected and they would receive banking services in return. Finally, the exchange of PII was beneficial to the recipient, Veridian, in that it received valuable personal information that made banking with its customers possible."). Plaintiffs have adequately pleaded an implied-in-fact contract under Iowa law, thus M.A. Ford's motion should be denied.

### 3. Plaintiffs Have Stated Claims for Breach of Fiduciary Duty

M.A. Ford's attack on Plaintiffs' claim for fiduciary duty, again, insists that "the CCAC is absent of any cognizable injury and thus Plaintiffs cannot establish damages or causation for the same." Def's Mem. at 23. Because causation and damages have been addressed heavily at this point, Plaintiffs will turn to the existence of a fiduciary duty in this context.

"The existence of a fiduciary relationship 'turns on the facts of the case,' and 'may, in some cases, be decided by the court in a summary-judgment proceeding.'" *Albaugh v. The Rsrv.*, 930 N.W.2d 676, 685 (Iowa 2019) (quoting *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 13 (Iowa 2008). In Iowa, a fiduciary duty "embrac[es] both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another." *Id*. (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)). To determine the existence of a fiduciary relationship, Iowa courts consider the: acting on behalf of another, exercising influence over one person by another, reposing of confidence by one person in another, dominance of one person by another, inequality of the parties, and dependence of one person upon another. *Albaugh*, 930 N.W.2d at 686.

The fiduciary duty created between Plaintiffs and M.A. Ford is born out of M.A. Ford's duty to safeguard the PII that its employees entrusted it with. The moment Plaintiffs entrusted their employer with their highly sensitive and private PII, Plaintiffs' dealings with M.A. Ford went far beyond a simple "arms-length transaction." *Albaugh v. The Rsrv.*, 930 N.W.2d 676, 686 (Iowa 2019).

M.A. Ford argues that, under no circumstances, may an employer-employee relationship create a fiduciary relationship. However, it is not simply the existence of an employer-employee relationship that gives rise to the fiduciary relationship. Here, Plaintiffs allege they were required to entrust Defendant with their personal information and that they understood M.A. Ford would adequately protect their PII from unauthorized access. Courts have found breach of a fiduciary duty to be properly pled in the context of confidential relationships such as the one pleaded by Plaintiffs here. *See, e.g., Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1383 (N.D. Ga. 2021); *Doe v. Fertility Centers of Illinois, S.C.*, No. 21 C 579, 2022 WL 972295, at *5 (N.D. Ill. Mar. 31, 2022); *In re Shields Health Care Group, Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024); *Miller v. NextGen Healthcare, Inc.*, No. 1:23-CV-2043-TWT, 2024 WL 3543433, at *5 (N.D. Ga. July 25, 2024).

The Court should deny Defendant's motion to dismiss this count.

### 4.  Plaintiffs Have Sufficiently Stated a Claim for Unjust Enrichment

"A claim for unjust enrichment under Iowa law is comprised of the following three elements: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Mohsen,* 2024 WL 2080177, at *8 (internal quotation marks omitted). In *Mohsen*, the Court found allegations that the plaintiffs provided a benefit to the defendant credit union "in

the form of payments for financial services, as well as providing their PII to Veridian that was used to facilitate payment and the provision of services" were sufficient to state a claim for unjust enrichment after the PII was stolen by data thieves. *Id*.

Although Defendant is aware of the recent *Mohsen* precedent, citing the case elsewhere in its brief, for its argument against Plaintiffs' claim for unjust enrichment Defendant directs the Court to *In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019), a case in which a customer sued a grocery store over the theft of his credit card information. *Id*. at 959. The Eighth Circuit affirmed dismissal of the plaintiff's unjust enrichment claim because he "paid for groceries, the price of which would have been the same whether he paid with cash or a credit card." *Id*. at 966. That is, the grocery store could not have been unjustly enriched because, unlike the credit union in *Mohsen*, it did not need the plaintiff's private information to facilitate its business and did not benefit from the receipt of the plaintiff's credit card number.

The case at bar is readily distinguishable. Here, Plaintiffs were employees who conferred benefits on Defendant in the form of their labor and their valuable personal information, both of which were necessary for running Defendant's business. *See* Compl. ¶¶ 43, 56. Under those circumstances, "it would be inequitable and unconscionable to allow [the defendant] to retain the money it saved by shirking data-security, while leaving Plaintiffs to suffer the consequences." *Sackin v. Transperfect Global, Inc.*, 278 F.Supp.3d 739, 751 (S.D. N.Y. 2017). Numerous courts have denied motions to dismiss unjust enrichment claims in data breach cases involving employers and employees. *Id*.; *Hays v. Frost & Sullivan, Inc.*, No. SA-23-CV-01490-FB at 28 (W.D. Tex. Aug. 16, 2024) (report and rec. adopted Sep. 4, 2024) (unjust enrichment pled where the defendant "benefited from the provision of PII (which was required to collect payment from clients or to facilitate the employment of employees)"); *Capiau v. Ascendum Mach.*, No. 3:24-cv-00142 at 27

(W.D. N.C. Aug 08, 2024) (unjust enrichment pled where "Defendant allegedly accepted the benefits accompanying Plaintiff's data without implementing adequate safeguards to protect Plaintiff's PII."); *Whitfield v. ATC Healthcare Servs.*, No. 22-cv-5005 at 14 (E.D. N.Y. Aug 22, 2023) (unjust enrichment pled where "Defendant benefitted from receiving Plaintiff's PII and PHI and her subsequent employment yet failed to protect that information."). The result should be the same here: it would be unjust to allow Defendant to retain the benefits of Plaintiffs' data and labor without providing the reasonable level of data security Plaintiffs had a right to expect.

### 5. Plaintiffs Have Sufficiently Stated a Claim for Declaratory and Injunctive Relief

Defendant correctly points out that the Declaratory Judgment Act, 22 U.S.C. § 2201, *et seq.*, describes a remedy, not a stand-alone cause of action. That is, where a plaintiff has a well-pled cause of action in tort or contract, declaratory judgment is a form of relief that will always be available to the court. For that reason, in the data breach context, courts have denied motions to dismiss claims for declaratory judgment. *See Rodriguez v. Mena Hosp. Comm'n.*, No. 2:23-cv-2002 at 30 (W.D. Ark. Nov. 1, 2023) ("Because the Court has not dismissed all of Plaintiffs' substantive claims, the Court will not dismiss the declaratory judgment claim."); *Gerber v. Twitter, Inc.*, 4:23-cv-00186-KAW, at 12 (N.D. Cal. Mar 29, 2024) (motion to dismiss claim for declaratory judgment denied because "this cause of action merely requires a predicate claim."). As discussed above, Plaintiffs have pled claims for negligence, breach of contract, breach of fiduciary duty, and unjust enrichment. Declaratory judgment would be an appropriate remedy in conjunction with any of those claims. Therefore, Defendant's motion to dismiss should be denied.

As for Plaintiffs' claim for injunctive relief, Defendant's argument for dismissal confuses the issues. In its brief, Defendant largely repeats its Rule 12(b)(1) arguments about the supposedly speculative or inchoate nature of the risk of identity theft and loss of privacy Plaintiffs are

experiencing now. That cow is out of the barn, so to speak. Nothing can undo the concrete harms already caused by Plaintiffs' sensitive data falling into criminal hands. Those harms are the subject of Plaintiffs' claims for damages. Plaintiffs' claim for injunctive relief is aimed at protecting the cows that remain in the barn, which is to say the data still sitting on Defendant's servers, poorly secured.

As alleged in Plaintiffs' Complaint, their data "remain backed up in Defendant's possession," and "[t]here is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the breach." Compl. ¶¶ 67, 241. Given the constant and growing risk of cyberattacks alleged in Plaintiffs' Complaint, (Compl. ¶ 69), and the fact that Defendant has *already* been successfully targeted at least once, Plaintiffs' desire for injunctive relief that would guard against future attacks is justified.

Courts have denied motions to dismiss claims for injunctive relief based on similar allegations. In *In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210-KAM-SJB, at 16-18 (E.D. N.Y. Jul. 21, 2023), for example, the defendant argued that injunctive relief would be redundant because it had already taken steps to prevent future data breaches. The *GEICO* court denied the defendant's motion to dismiss and found the plaintiffs' allegation that their data was "subject to further compromises" was sufficient for standing purposes. *Id.* Similarly, in *Carr v. Okla. Student Loan Auth.*, No. CIV-23-99-R (W.D. Okla. Oct. 19, 2023), the Western District of Oklahoma rejected the defendant's argument that injunctive relief "would have no impact on the Data Security Incident that already occurred," finding instead that the plaintiffs' allegation that their sensitive data was still in the defendant's possession and subject to future attacks provided "a separate basis for subject matter jurisdiction" for injunctive relief. *Id.* at 12.

Finally, an order broadly dismissing Plaintiffs' claims for declaratory and injunctive relief

would needlessly handcuff the Court. The Eastern District of Pennsylvania made this point in *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019 (E.D. Pa. May 6, 2021), concluding that dismissal of claims for declaratory and injunctive relief "would curtail the Court's broad equity powers to fashion the most complete relief possible." *Id*. at 15 (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 550 (D.N.J. 2004)) (internal quotation and editing marks omitted). For all these reasons, at this early stage of the case, Defendant's motion to dismiss Plaintiffs' claims for declaratory and injunctive relief should be denied.

## V.  CONCLUSION

The Court should deny Defendant's Motion in its entirety.


Date: December 24, 2024                    Respectfully submitted,


                                           */s/ Amina A. Thomas*

                                           J. Barton Goplerud
                                           Brian O. Marty
                                           5015 Grand Ridge Drive, Suite 100
                                           West Des Moines, IA 50265
                                           Tel: (515) 223-4567
                                           Fax: (515) 223-8887
                                           goplerud@sagwlaw.com
                                           marty@sagwlaw.com

                                           Leigh S. Montgomery**
                                           Texas Bar No. 24052214
                                           lmontgomery@eksm.com
                                           **EKSM, LLP**
                                           1105 Milford Street
                                           Houston, Texas 77006
                                           Phone: (888) 350-3931
                                           Fax: (888) 276-3455

                                           Lynn A. Toops*
                                           Amina A. Thomas**
                                           **COHEN & MALAD, LLP**
                                           One Indiana Square, Suite 1400

Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

J. Gerard Stranch, IV**
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss**
Raina C. Borrelli**
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com


**ATTORNEYS FOR PLAINTIFF**


\* *Pro Hac Vice* forthcoming

\*\*Admitted *Pro Hac Vice*