**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY HARTER and KEVIN HAYS, on behalf of themselves and all others similarly situated;<br><br>*Plaintiffs*,<br><br>v.<br><br>M. A. FORD MFG. CO., INC. dba M.A. FORD MANUFACTURING COMPANY, INC., an Iowa Corporation,<br><br>*Defendant*. | Case No.: 3:24-cv-00056-SMR-SBJ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARILY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Harter and Hays, individually and on behalf of all others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[1] preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

**I.    INTRODUCTION**

On or about May 31, 2024, Defendant M.A. Ford Mfg. Co., Inc. d/b/a M.A. Ford Manufacturing Company, Inc. ("Defendant" or "M.A. Ford"), announced a Data Security Incident (herein referred to as "Data Security Incident" and within the proposed Class definition as "Data Breach") impacting the personally identifying information ("PII" or "Private Information"), including some Social Security numbers, dates of birth and certain financial information of its

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section I of the Settlement Agreement, attached hereto as Exhibit 1.

1

client's employees. *See* Declaration of Class Counsel ("Decl.") ¶ 2, attached as **Exhibit 2**. As a result of the Data Security Incident, this Action was initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id*. ¶ 3. Defendant denies all liability and wrongdoing. *Id*. ¶ 3; Settlement Agreement, attached as **Exhibit 1**.

After arm's-length negotiations spanning over six months, the Parties reached a Settlement that is fair, adequate, and reasonable. Decl. ¶¶ 5–7, 27–30. The Settlement Agreement addresses payments for benefits to Settlement Class Members, Notice and Administrative Expenses, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court.  Decl. ¶¶ 8–10, 13; Exh. 1 ¶¶ 2.1–2.3, 2.6, 3.2, 7.1–7.3. Additionally, Defendant has agreed to provide a period of credit monitoring for Settlement Class Members who submit valid claims, and has made assurances regarding improvements to the security of its systems housing Private Information. Decl. ¶ 10; Exh. 1 ¶ 3.1. The Parties negotiated Plaintiffs' Service Awards and Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses separately, and those payments will be addressed in a separate motion. Decl. ¶¶ 13–15; Exh. 1 ¶¶ 16.1–16.3. Plaintiffs believe the Settlement is favorable to the Settlement Class. Exh. 1¶¶ 18.5., 18.8.

## II.    BACKGROUND AND PROCEDURAL HISTORY

In December 2023, cybercriminals gained access to M.A. Ford's network systems, possibly accessing the personally identifiable information ("PII") of certain M.A. Ford current or former employees (herein referred to as "Data Security Incident" and within the proposed Class definition as "Data Breach"). M.A. Ford suffered a cyberattack between December 12, 2023, and December 14, 2023, when an unauthorized actor accessed M.A. Ford's systems that included PII.

On May 31, 2024, M.A. Ford notified Class Members and the Office of the Maine Attorney General that 4,359 current and former employees personally identifiable information ("PII") may have been accessed by unauthorized third-parties. On July 3, 2024, Plaintiff Timothy Harter filed his Class Action Complaint in the U.S. District Court of the Southern District of Iowa, captioned *Timothy Harter v. M.A. Ford Mfg. Co., Inc. d/b/a M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00056-SMR-SBJ (herein "*Harter* Complaint"). Plaintiff Harter alleged that M.A. Ford was on notice of the risk of a data security incident and that despite this knowledge and understanding, M.A. Ford failed to prevent the attack. Plaintiff Harter asserted causes of action sounding in negligence, negligence per se, breach of implied contract, unjust enrichment, breach of fiduciary duty, and requested declaratory and injunctive relief. *Harter* Complaint, Case No. 3:24-cv-00056.

On July 11, 2024, Plaintiff Kevin Hays filed his Class Action Complaint, captioned *Kevin Hays v. M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00057-SMR-HCA (herein "*Hays* Complaint"). Plaintiff Hays alleged that on December 12, 2023 M.A. Ford lost control over its current and former employees' personally identifiable information ("PII") and protected health information ("PHI") when hackers bypassed M.A. Ford's cybersecurity undetected and accessed its employees' PII. Plaintiff Hays alleged M.A. Ford failed to implement and maintain reasonable security procedures and practices as required by common law, industry standards and state and federal law. Plaintiffs Hays also alleged that the notice provided by M.A. Ford was inadequate. He asserted causes of action sounding in negligence, negligence per se, breach of implied contract, unjust enrichment, bailment, and violation of the Iowa Personal Information Security Breach Protection Act. *Hays* Complaint, Case No. 3:24-cv-00057.

On October 10, 2024, the U.S. District Court for the Southern District of Iowa issued an order Granting in Part the Joint Proposed Scheduling Order. Following the order, on the same day, Plaintiffs Harter and Hays (collectively herein "Plaintiffs") filed a Consolidated Class Action Complaint (herein "Complaint") captioned *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company Inc*., Case No. 3:24-cv-00056-SMR-SBJ. Plaintiffs filed on behalf of themselves and a purported class of "[a]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Breach (the "Class") (ECF 12 .¶ 153). The Complaint alleged M.A. Ford failed to properly protect personal information in accordance with its duties, had inadequate data security, and delayed notifying potentially impacted individuals. The Complaint alleged causes of action for negligence, negligence per se, breach of an implied contract, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief.

On November 25, 2024, M.A. Ford filed a motion to dismiss the Complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6). (ECF No. 25, 25-1). Instead of increasing litigation costs, the Parties agreed to attend mediation to explore resolution of the case prior to fully briefing Defendant's motion to dismiss. On April 30, 2025, the Parties therefore sought a stay of the pending deadlines to attend mediation [Doc. 28], which the Court granted on May 1, 2025 [Doc. 29-30].

The Parties agreed to exchange informal discovery for settlement purposes. In advance of the mediation, M.A. Ford provided requested informal discovery addressing the number of individuals impacted by the Data Security Incident nationwide. Plaintiffs did not provide informal discovery relating to the harms they alleged to have suffered from the Data Security Incident. Class Counsel also state they investigated the facts relating to the Data Security Incident, analyzed

the evidence adduced based on publicly available information, court filings, and information exchanged during settlement discussions, and researched the applicable law with respect to the Plaintiffs' claims against M.A. Ford and potential defenses thereto in preparation for the mediation.

On August 26, 2025, the Parties engaged in a Zoom Mediation conducted by mediator Jill Sperber. After a full day mediation of hard-fought negotiations aided by Ms. Sperber, the Parties were able to reach a resolution.

On August 27, 2025, the parties filed a Joint Status report to the Court informing the Court of the successful mediation and requesting thirty days to get their settlement agreement finalized and file their Motion for Preliminary Approval of the proposed class settlement. [Doc. 41] Over the following weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Decl. ¶ 16. The Parties requested two additional extensions of time to file their approval paperwork, while working through the Settlement Agreement and notices necessary to complete the filings. See [Docs. 43, 45]. The Settlement Agreement was finalized on December 15, 2025. *See* Settlement Agreement attached hereto as Exhibit 1. It is proposed Class Counsel's opinion that the Agreement presents a favorable result for the Settlement Class. Decl. ¶ 5, 33; Exh. 1, pg. 3.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class has approximately 4,359 members and is defined as follows:

> All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford.

Exh. 1 ¶ 1.47; Decl. ¶ 2. The Settlement Class specifically excludes (i) the judges presiding over the Action, members of their staff, and members of their direct families; (ii) Defendant and any

other Releasee; (iii) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

    **B.**    **Settlement Consideration**

        **1.**    *Benefits and Cash Payments*

The Settlement addresses payments for benefits to Settlement Class Members, Notice and Administrative Expenses, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court. Exh. 1 ¶¶ 2.1–2.3, 3.1, 4.1-4.3, 5.1, 7.2, 8.1-8.3, 16.1-16.3. The Settlement Class Members may claim one or more of a variety of awards. *Id.*

First, Settlement Class Members may claim Compensation for "ordinary" Out-Of-Pocket Losses, which includes up to a total of $500.00 per person for documented efforts mitigating against identity theft resulting from the Data Security Incident. Exh. 1 ¶ 4.1. Out-of-Pocket Losses include documented out-of-pocket expenses incurred as a result of the Data Security Incident such as bank fees, long-distance phone charges, minute-based cell phone charges, data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. *Id.* Other examples of Out-of-Pocket Losses are fees for credit reports, credit services, credit monitoring, or another identity theft insurance product purchased between the date of the Data Security Incident, and the date of the close of the Claims Period. *Id.* ¶ 3.1, 4.2.

In addition to compensation for Ordinary Losses, Settlement Class Members may claim Compensation of up to $5,000.00 for "extraordinary" Out-of-Pocket Losses for documented identify theft and verified fraud resulting from the Data Security Incident. Exh. 1 ¶ 4.1. Out-of-Pocket Losses means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred as a result of the Data Security Incident, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed

costs associated with fraud or identity theft, including professional fees such as attorneys' fees, accountants' fees, and fees for credit repair services, and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring or other mitigative services that were incurred on or between December 12 to 14, 2023 and the Notice Deadline. *Id.* ¶ 1.33,

After the distribution of the Fee Award and Costs, Notice and Administrative Expenses, Service Award Payments, Credit Monitoring Services, Out-of-Pocket Losses, and Attested Time Claims, the Settlement Administrator will make pro rata cash settlement payments of the remaining Settlement Fund to each Settlement Class Member. Exh. 1 ¶ 5.1 Finally, each Settlement Class Member may claim three (3) years of three-bureau ("3B") credit monitoring and up to three (3) years of identity restoration services, in addition to the above. *Id.* ¶¶ 3.1-3.6.

The Parties negotiated Plaintiffs' Service Awards and an award of Attorneys' Fees and costs separately from the Benefits and Cash Payments described above. Decl. ¶¶ 13, 15.

**2.** ***Business Practice Adjustments*** – Defendant represents that it has adopted and implemented additional data security measures following the Data Security Incident to further strengthen the security of its systems. Exh. 1 ¶ 8.1. If at any time prior to the Final Approval Hearing Class Counsel has information indicating M.A. Ford is not maintaining the Business Practice Adjustments, the Parties are required to meet and confer to discuss the issue prior to seeking court intervention. *Id* ¶ 8.3.

**3.** ***Releases*** – The Releasing Parties will release the Released Parties for claims relating to the Data Security Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, again Defendant and the other Released Parties. Exh. 1 ¶¶ 15.1-15.3

4.      *The Notice Program, Claim Process, Opt-Outs, and Objections*

***Notice and Administrative*** *Expenses*– Defendant shall be responsible for all expenses related to settlement administration, all expenses or costs associated with providing Notice to the Settlement Class, identifying and locating Settlement Class Members, administering, calculating, and distributing the Settlement Fund to Settlement Class Members. *Id.* ¶¶ 1.30, 1.51, 2.5.

***Settlement Administrator*** – The Parties have agreed to use Simpluris, Inc., as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶ 1.46.

***Notice Program*** – Defendant will deliver the Class Member Information to the Settlement Administrator within 14 days of Preliminary Approval. Exh. 1 ¶ 10.1. Within 14 days of Preliminary Approval, Notice will be sent to the Settlement Class Members to the last postal address Defendant has on record after running the address through the USPS National Change of Address database to update any change of address on file with the USPS. The Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator. *Id*. ¶ 6.3. Notice shall include, inter alia: direction to the Settlement Website, the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing. *Id*. ¶ 1.28, Ex. A.

***Claims Process*** – The Claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Exh. 1 ¶ 7.1.  If Reimbursement for Out-of-Pocket Losses and Attested Time is elected, Class Members

must submit a valid Claim Form, or decide whether to opt-out or object. Decl. ¶ 32. Claim Forms are due to the Settlement Administrator by the Claims Deadline. *Id*. ¶ 7.1. The Claim Form is in plain language for easy completion. Decl. ¶ 19. The Settlement Administrator will review the Claim Forms for completeness and qualification. *Id*. ¶¶ 1.5, 4.2, 4.4, 4.5. Implausible claims may be submitted to the Settling Parties for resolution. *Id*.

*Opt-outs and Objections* – The opt-out and objection deadlines are 30 days after the date on which the notice program commences, *Id.* ¶ 11.1, to provide sufficient time to access and review the Settlement documents, including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards. Anyone who opts out may not object.

### 5. Service Awards, Attorneys' Fees and Costs

*Service Awards* – The Agreement calls for reasonable Service Awards for both the Class Representatives not to exceed $2,500.00 each, Agreement ¶ 16.3, meant to compensate them for their efforts on the Settlement Class's behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Decl. ¶ 34.

*Attorneys' Fees and Costs* – After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs separate from the total of Valid Claims. Class Counsel intends to seek an attorneys' fees and costs award not to exceed $141,666.67. Exh. 1 ¶ 16.1. The Notices advise the Settlement Class of these intended requests and further information on how to object. *Id.*, Exh. A, B; Decl. ¶ 31. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Award 14 days prior to the Objection Date. Exh. 1 ¶ 7.5.

## IV. LEGAL AUTHORITY

The Federal Rules of Civil Procedures provides the standard under which a court may approve a class action settlement that would "bind class members." Fed. R. Civ. P. 23(e). A court may only approve such a settlement "after a hearing and only on finding that it is fair, reasonable, and adequate. *Id*. However, when considering a class settlement, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922,932 (8th Cir. 2005). Therefore, approval of a class action under Rule 23 is committed "to the sound discretion" of the district court. *Grunin v. Int'l House of Pancakes,* 513 F.2d 114,123 (8th Cir. 1975).

Before the Settlement can be finally approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be expensive, so courts will generally first conduct a preliminary fairness review. *See Newberg on Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arm's-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on

10

finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. The United States Court of Appeals for the Eighth Circuit has set forth four factors which courts within the Circuit have traditionally applied when considering whether a settlement is fair, reasonable, and adequate: (1) the merits of the Plaintiffs' case, weighed against the terms of the settlement agreement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

However, the Courts in this circuit will consider the Rule 23(e)(2) factors along with the factors developed by courts in the Eighth Circuit. *Swinton v. Squaretrade, Inc.,* No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019);*see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case- law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Here, the foregoing Rule 23 and *Van Horn* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Before assessing the parties' Settlement Agreement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in

order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). The key to determining whether the numerosity requirement is satisfied rests on the impracticability of joining potential class members. *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 (S.D. Iowa 2009).

Here, the numerosity requirement is easily met. Defendant represents that the Settlement Class consists of approximately 4,359 members.- Decl. ¶ 2. *See, e.g., Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982) (affirming certification of a class of 74 persons)*; Morgan v. United Parcel Serv. of Am., Inc*., 169 F.R.D. 349, 355 (E.D.Mo.1996) (finding that a class of 500 members satisfied the numerosity requirement).

**Commonality.** Rule 23(a)(2)'s commonality factor requires only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171,1174 (8th Cir. 1995). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir. 1977). It must be shown that the course of action giving rise to the cause of action affects all putative class members, and that at least one of the elements of that cause of action is shared by all of the putative class members. *Wineland*, 267 F.R.D. at 674 (S.D. Iowa 2009). *See also Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D.Minn.1995) (citing *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993)). The burden imposed by this requirement is light and easily met in most cases. *See In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D.Minn.1999); Newberg on Class Actions § 3:10 (4th ed.).

Here, common issues of law and fact exist, and the defenses and claims are typical throughout the class. Plaintiffs and Class members are unified by common factual allegations – M.A. Ford violated their rights by maintaining inadequate cybersecurity and failing to safeguard current and former employee personally identifiable information. The Class members will not need to present evidence on liability that varies from member to member.

All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Thus, common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class Members' Personal Information was compromised in the Security Incident; whether Defendant owed a duty to Plaintiffs and Settlement Class Members; whether Defendant breached its duties; whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Security Incident; and whether Defendant committed the common law and statutory violations alleged in the Complaint. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1054 ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *7 (W.D. Ky. Apr. 3, 2024) ( commonality requirement met at the preliminary approval stage where the class members' injuries all arose from the defendant's "failure to maintain adequate data security and to secure its employees' PII" so that "the common issue at trial would be the sufficiency of [the defendant's] data security practices and its failure to secure its employees' PII"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16- MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions

of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

*Typicality.* With respect to typicality, "the typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson*, 554 F.2d at 830. Because commonality and typicality are similar, the Eighth Circuit requires under typicality that the class representative demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Paxton*, 688 F.2d at 562 (*quoting Donaldson*, 554 F.2d at 830); *See also Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996).

A named plaintiff's claim is typical "if the claims or defenses of the representative and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561. The burden is fairly met so long as other class members have claims similar to the named plaintiff. *Alpern,* 844 F.3d at 1540; *Paxton,* 688 F.2d at 561-62 (holding that typicality is met when the claims of the named plaintiffs emanate from the same event or are based upon the same legal theory as the claims of the class members).

Here, Plaintiffs and Class Members are either current or former employees that worked for Defendant. Defendant maintained each of their personally identifying information on its computer network systems. And Plaintiffs and Class member suffered similar damages due to the improper disclosure of their personally identifying information resulting from Defendant's conduct and Data Security Incident. The primary factual issues is whether Defendant was negligent in failing to safeguard the personally identifying information and whether that negligent conduct amounted to a breach of contract which unjustly enriched the Defendant. This issue affects each class member uniformly and predominates over any individual issues. As such Plaintiffs' claims are typical of

the class claim in that they all arise from the same course of conduct and are based on the same legal theories.

***Adequacy of Representation.*** The first two factors of Rule 23(e)(2) concern the conduct of the Class representative and Class Counsel, asking whether (1) they have adequately represented the class; and (2) the settlement proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B). As it pertains to the Class Representatives, the inquiry is two-fold: (1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel. *Kelly v. Phiten USA, Inc.* 277 F.R.D. 564,569; see also *Paxton*, 688 F.2d at 5652-63. There is an assumption of fairness when a settlement is reached after arm's-length negotiations. *Phiten USA, Inc.* 277 F.R.D. at 570.

The Court previously found that the Class Representatives adequately represented the class by virtue of the fact that the injury to Class Members are based on the same operative facts. Moreover, the damages alleged by Plaintiffs are substantially similar as both Plaintiffs and all Class Members had their personal identifiable information ("PII") compromised in a Data Security Incident suffered by the Defendant. *See Grove v. Principal Mut. Life Ins. Co.,* 200 F.R.D. 434, 440 (S.D. Iowa 2001) (concluding that the class representative shared the same interests as the class members because they suffered the same injury and there were no antagonistic interests with the class.)

The Court should then be able to easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). Especially in light of the fact that the Class Counsel have represented numerous other classes in cases alleging improper disclosure of PII. *See Wineland*, 267 F.R.D. at 675 (S.D. Iowa 2009) (where the Court determined that the plaintiffs understanding of the basic issues involved in the litigation,

responsibilities as Class representatives, and willingness to fulfill those responsibilities satisfied the adequacy determination.) This Court can be sure that the results obtained by Class Counsel are strong, and that there is no question regarding their performance.

Plaintiffs adequately represent the Settlement Class, as they have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Decl. ¶¶ 5, 6, 27, 34. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See Id.* ¶¶ 5, 7, 21–25.; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d at 813 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

***Predominance and Superiority.*** Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

A claim will generally satisfy the predominance requirement "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Wineland,* 267 F.R.D. at 675 (S.D. Iowa 2009); *See also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.Minn.1995); *In re Workers' Compensation,* 130 F.R.D. 99, 108 (D.Minn.1990).

Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over any questions affecting only individual class members. *Id.* In determining predominance, the primary concern "is whether defendant's liability as to all plaintiffs can be established by common evidence." *Avritt v. Reliastar Lif Inl. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010). This is determined by the Court's inquiry into whether, given the factual setting of the case, if the plaintiffs" general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.,* 400 F.3d 562,566 (8th Cir. 2005).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant owed a duty to Plaintiffs and Settlement Class Members, whether Defendant breached its duty, and whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Security Incident. These issues are subject to "class-wide proof" and "outweigh those issues that are subject to individualized proof." Courts have found similar settlement classes to meet the preponderance requirement in data breach

cases. "The Primary factual issue in this case." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases). The Settlement Class meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits. *See e.g.*, *Bowen*, 2024 WL 1446468, at *7; *See also In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same).

With respect to superiority, Rule 23(b)(3) identifies the following factors, each of which weighs in favor of finding superiority:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. *See Bowen*, 2024 WL 1446468, at *7 (citing *Pfaff v. Whole Foods Mkt. Grp. Inc*., No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("The 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative

value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery.")). Given the legal issues facing individual class members, as well as the uncertainty of success as noted by plaintiffs' counsel at oral argument, this court should find that employing the class devise will achieve economies of scale for class members, conserve judicial resources, and provide a uniform result for similarly situated individuals. *See Bank of the West* 2018 WL 5305562 at *7 (S.D. Iowa Sept. 10, 2018); *Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669, 675 (S.D. Iowa 2009).*

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

**B.    The Settlement Terms are Fair, Adequate, and Reasonable.**

The factors identified by Rule 23(e)(2) and *Van Horn*, all weigh in favor of granting Preliminary Approval to allow Notice to issue to the Settlement Class.

To determine whether a settlement is "fair, reasonable, and adequate," district courts must analyze the four *Van Horn* factors: "the merits of the Plaintiffs' case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn*, 840 F.2d at 607. The defendant's financial condition and the amount of opposition to the settlement are the only factors that cannot be discussed in the Rule 23 analysis and will be discussed after a through explanation of why this settlement satisfies Rule 23 requirements.

1.    ***Class Representative and Counsel have Adequately Represented the Class and the Settlement is fair and the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(A) & (B)).***

The first two factors of Rule 23(e)(2) concern the conduct of the Class Representative and Class Counsel, asking whether (1) they have adequately represented the class; and (2) the settlement proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B).

As it pertains to the Class representative, the inquiry is two-fold: (1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel. *Kelly v. Phiten USA, Inc,* 277 F.R.D. 564,569 (S.D. Iowa 2011).  These factors can be summed up to ask whether the settlement was reached in fairness, and there is an assumption of fairness when a settlement is reached after arm's length negotiations.

Here, the class representative and class counsel have adequately represented the class because the Settlement Class members are all potentially affected by the same Data Security Incident as the Class Representative,  and thus the Class Representative has common interests with the Settlement Class. Moreover, the Class Representative has ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Decl. ¶ 34.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Decl. ¶¶ 4–5. As such, Federal Rule of Civil Procedure 23(e)(2)(A) supports Preliminary Approval.

Further, the Agreement is clearly the product of good-faith arm's-length negotiations and there is no evidence of fraud or collusion. After an exchange of information related to liability and

damages and rigorous negotiations that accounted for the strengths and weaknesses of the Parties' respective positions, the Parties negotiated a fair and reasonable settlement similar to or exceeding the value of other similar data breach class action settlements. Decl. ¶¶ 5, 29–31. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *ld.* ¶¶ 4–6.

There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶ 7, 26, 27; Agreement ¶ 10.5. Moreover, the proposed Settlement protects the interest of the named plaintiffs as well as the class members in total. *Grunin,* 513 F.2d at 123*; In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135 *(8th Cir.1984).* Accordingly, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied and weighs in favor of approval.

> **2.  *The Agreement is reasonable and provides substantial relief to the Settlement Class, considering the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C) & Van Horn Factor (3)).***

The third Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval. Here, the Court must consider the relief provided in the settlement agreement against the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). The analysis is reflected in two of the *Van Horn* factors: the merits of the plaintiff's case weighed against the terms of the settlement and the complexity and expense of further litigation.

The Eight Circuit has recognized that class actions "place an enormous burden of costs and expenses" upon the judiciary and the parties. *Marshall v. Nat'l Football League,* 787 F.3d 502,512 (8th Cir. 2015).

The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Security Incident. Specifically, all Settlement Class

Members may receive three (3) years of 3B credit monitoring. In addition, Settlement Class Members may receive recovery for certain documented Ordinary Losses and Extraordinary Losses, or a pro rata cash payment. These benefits are consistent with, and in fact exceed, other approved settlements. Decl. ¶ 12.

The Eighth Circuit has held that the public policy favoring settlement agreements means "courts should approach them with a presumption in their favor." *Petrovic,* 200 F.3d at 1148. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-

CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. There will be a need to interpret technical terms and concepts creating a complex litigation of alleged data breach and computer security expertise. Thus the Court would have to consider conflicting expert testimony about proper standards and practices of information technology and cyber security, creating a battle of the experts where it would not be clear how a jury would resolve such issues. *See Fleischer v. Phoenix Life Ins. Co.,* Civil Action No. 11-cv-8405 (CM), [2015 BL 295435], 2015 U.S. Dist. LEXIS 121574, [2015 BL 295435], 2015 WL 10847814, at *9 (S.D. N.Y. Sept. 9, 2015). This fact would substantially raise the risk of proceeding to trial and appeal rather than settlement.

Whereas, the Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiffs strongly believe in the merits, they also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs will likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles-even just to make it past the pleading stage. *See, e.g., PHT Holding II LLC v. North Am. Co. For the Life & Health Ins.,* 2023 WL 8522980 (S.D. Iowa Nov. 2023). Class certification is another hurdle. *See, e.g., ln re Blackbaud, lnc., Customer Data Breach Litig.*, No. 3:20-mn-02972- JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain

significant benefits without risking not receiving any relief at all if the case continues. Given the nature of the dispute, distribution of the payments is not complicated and does not require unreasonable action on the part of Class Members, and Class members may still receive some monetary benefits if they do nothing via pro rata cash payments. The method of distribution merely relies on class members submitting claims backed by evidence and receiving a check in the mail. Even if they do not receive or have monetary damages, they can still enjoy the benefits of the credit monitoring from three major bureaus and identity restoration services.

Also, there are no collateral agreements between the parties to the case that other class members are not or could not have been a part of.

Thus this factor weighs in favor of approving the settlement because it avoids the complexity of litigation this type of case, guarantees that plaintiffs and class members will prevail in some way regardless of the merits of their case, the attorney fees are reasonable, the distribution will be effective and direct without complicating the settlement, and there are no collateral agreements between the parties to this litigation.

### 3. *The Settlement Treats Settlement Class Members Equitably Relative to Each Other.*

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct mail notice of the Settlement and informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *See* Section III(B), *supra*. Every Settlement Class Member who submits a valid claim and who attests that he or she was impacted by the Security Incident is eligible to receive a reimbursement for Ordinary Losses of up to $500.00, Extraordinary Losses of up to $5,000.00, or a pro rata cash payment, as well as credit monitoring services for up

to three years. Exh. 1 ¶¶ 4.1-4.3. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

Courts have regularly approved settlement allocation on a claims made and pro rata basis. *See Carroll v. Flexsteel Indus. Inc.,* 2022 WL 4002313, at *3 (N.D. Iowa Sept. 1, 2022); *Phoenix Life,* 2015 WL 10847814, at *12 (finding distribution on a pro rata basis to be "fair, adequate, and reasonable").

### 4. *Additional Van Horn Factors*

In addition to the express requirements of Rule 23 discussed above, the Eighth Circuit has identified additional considerations when evaluating a class settlement. *See Swinton v. SquareTrade, Inc.,* 454 F.Supp. 3d 848-860-861 (S.D. Iowa 2020).

### i. *Defendant's financial condition.*

There is nothing that has been provided by the Defendant that indicates it is financially incapable of satisfying its obligations under this settlement agreement, which the parties have confirmed. *See Marshall,* 787 F.3d 512 (8th Cir. 2015). Thus, this factor is neutral because the defendant is in good financial standing which would permit it to adequately pay for its settlement obligations.

### ii. *Amount of Opposition to the Settlement*

The Second factor to be considered is the amount of opposition to the Settlement Agreement from Class members. There are no recorded objections yet to the Settlement Agreement and there are no anticipated objections at the Final Approval Hearing to object to the Settlement Agreement. As mentioned above, this Settlement Agreement will likely benefit class members in the only conceivable manner that class members would have available to redress their injuries through monetary and non-monetary benefits. Both of which are substantial and greater than what an individual plaintiff would be able to receive if they chose to continue with

26

this litigation. With no known or anticipated objections, this factor weighs heavily in favor of approval.

**5.  *Summary.***

Each factor identified under Rule 23(e)(2) and as required by the Eighth Circuit in *Van Horn* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the Settlement is an excellent result. It could not have been achieved without full commitment from the proposed Class Representatives and Class Counsel. The Settlement is both fair and adequate and meets each of the Rule 23(e)(2) and *Van Horn* factors such that notice of the Settlement should be sent to the Settlement Class. *See ODonnell*, 2019 WL 4224040, at *13 (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable and adequate under Rule 23(e) and the governing case all where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement.").

**C.    The Proposed Settlement Administrator Will Provide Adequate Notice.**

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Exh. 1, Exs. A–C. Defendant will provide the Claims Administrator with a list of Settlement Class Members within fourteen (14) days of Preliminary Approval. *See Id.* ¶

10.1. Within fourteen (14) days of entry of the Preliminary Approval Order, the Claims Administrator shall run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS. *Id*. Within fourteen (14) days of entry of the Preliminary Approval Order and to be substantially completed not later than fourteen (14) days after entry of the Preliminary Approval Order, the Claims Administrator will mail Postcard Notice to the Settlement Class Members to provide direct and individual notice to each Settlement Class Member. *Id*.

The Settlement Administrator will also establish and maintain a Settlement Website and will receive and review claim forms, requests for exclusion and objections. Exh. 1 ¶ 1.53. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *ld*. The Long Form Notice, Short Notice and Claim Form will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *ld*. ¶ 1.53 Exs. A–C.

In compliance with Rule 23(c)(2)(B), the Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Award for the Class Representative and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; explaining the binding effect of a class judgment on Class Member; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Exh. 1, Exs. A–C.

The proposed Postcard Notice is enough to satisfy due process and is consistent with notice programs approved in various Circuits. *See*, *e.g.*, *See Grunin v. International House of Pancakes,* 513 F.2d 114, 120-22 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975);*see also Maher v. Zapata Corp.,* 714 F.2d 436, 452 (5th Cir.1983).

A settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id.* (citations and quotation marks omitted). As described above, the Notice Program has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected. Accordingly, the Notice Program should be approved. Decl. ¶¶ 31–32.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| Event | Deadline |
|---|---|
| **Defendant to deliver the Class Member Information to the Settlement Administrator** | 14 days after Preliminary Approval Order |
| **Notice Program Begins (Postcard Notice Sent)** | 14 days after Preliminary Approval Order (subject to receipt of necessary information to pay Settlement Administrator and provision of Class Member Information and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order) |
| **Notice Program Complete** | 30 days after Notice Date |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 14 days before Objection Deadline |
| **Opt-Out Deadline** | 30 days after Notice Date |
| **Objection Deadline** | 30 days after Notice Date |
| **Deadline to Submit Claim Forms** | 90 days after Notice Date |
| **Final Approval Hearing** | **_____, 2026, at _____ am/pm**. |

## VII.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiffs as Class Representative; (7) appoint Lynn A. Toops of CohenMalad, LLP, Raina C.

Borelli of Strauss Borrelli, PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel; (8) appoint Simpluris, Inc., as the Settlement Administrator; (9) stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendant and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

Dated: December 17, 2025                    Respectfully submitted,

                                            */s/ Amina A. Thomas*
                                            Lynn A. Toops*
                                            Amina A. Thomas**
                                            **COHENMALAD, LLP**
                                            One Indiana Square, Suite 1400
                                            Indianapolis, Indiana 46204
                                            (317) 636-6481
                                            ltoops@cohenmalad.com
                                            athomas@cohenmalad.com

                                            Jarrett L. Ellzey*
                                            Leigh S. Montgomery*
                                            **ELLZEY KHERKHER SANFORD
                                            MONTGOMERY, LLP**
                                            4200 Montrose Blvd., Ste. 200
                                            Houston, TX 77006
                                            Tel: (888) 350-3931
                                            Fax: (888) 276-3455
                                            Email: jellzey@eksm.com
                                            Email: lmontgomery@eksm.com

                                            J. Barton Goplerud
                                            Brian O. Marty
                                            5015 Grand Ridge Drive, Suite 100
                                            West Des Moines, IA 50265
                                            Tel: (515) 223-4567
                                            Fax: (515) 223-8887

goplerud@sagwlaw.com
marty@sagwlaw.com


J. Gerard Stranch, IV**
Grayson Wells**
**STRANCH, JENNINGS & GARVEY PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
raina@stranchlaw.com

Samuel J. Strauss**
Raina C. Borrelli**
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile : (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com


**ATTORNEYS FOR PLAINTIFFS**

\* *Pro Hac Vice Forthcoming*

\*\* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This is to certify that on December 17, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Amina A. Thomas*
Amina A. Thomas**