UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY HARTER and KEVIN HAYS, on behalf of themselves and all others similarly situated;<br><br>*Plaintiffs*,<br><br>v.<br><br>M. A. FORD MFG. CO., INC. dba M.A. FORD MANUFACTURING COMPANY, INC., an Iowa Corporation,<br><br>*Defendant*. | Case No.: 3:24-cv-00056-SMR-SBJ |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' SERVICE AWARDS

Plaintiffs Timothy Harter and Kevin Hays ("Class Representatives"), individually and on behalf of all others similarly situated (collectively herein "Plaintiffs" or "Settlement Class Members") by and through undersigned counsel, respectfully submits this memorandum in support of Plaintiffs' Motion for Attorneys' Fees and Expenses and Plaintiffs' Service Award. For the reasons that follow, this Honorable Court should grant the motion.

### BACKGROUND

In December 2023, cybercriminals gained access to M.A. Ford Mfg. Co., Inc. d/b/a M.A. Ford Manufacturing Company, Inc.'s ("Defendant" or "M.A. Ford") network systems, possibly accessing the personally identifiable information ("PII") of certain M.A. Ford current or former employees (herein referred to as "Data Security Incident" and within the proposed Class definition as "Data Breach"). M.A. Ford suffered a cyberattack between December 12, 2023, and December 14, 2023, when an unauthorized actor accessed M.A. Ford's systems that included PII.

On May 31, 2024, M.A. Ford notified Settlement Class Members and the Office of the

1

Maine Attorney General that 4,359 current and former employees personally identifiable information ("PII") may have been accessed by unauthorized third parties. On July 3, 2024, Plaintiff Timothy Harter filed his Class Action Complaint in the U.S. District Court of the Southern District of Iowa, captioned *Timothy Harter v. M.A. Ford Mfg. Co., Inc. d/b/a M.A. Ford Manufacturing Company, Inc.*, No. 3:24-cv-00056-SMR-SBJ (herein "*Harter* Complaint"). Plaintiff Harter alleged that M.A. Ford was on notice of the risk of a data security incident and that despite this knowledge and understanding, M.A. Ford failed to prevent the attack. Plaintiff Harter asserted causes of action sounding in negligence, negligence per se, breach of implied contract, unjust enrichment, breach of fiduciary duty, and requested declaratory and injunctive relief. *Harter* Complaint, Case No. 3:24-cv-00056.

On July 11, 2024, Plaintiff Kevin Hays filed his Class Action Complaint, captioned *Kevin Hays v. M.A. Ford Manufacturing Company, Inc.*, No. 3:24-cv-00057-SMR-HCA (herein "*Hays* Complaint"). Plaintiff Hays alleged that on December 12, 2023, M.A. Ford lost control over its current and former employees' personally identifiable information ("PII") and protected health information ("PHI") when hackers bypassed M.A. Ford's cybersecurity undetected and accessed its employees' PII. Plaintiff Hays alleged M.A. Ford failed to implement and maintain reasonable security procedures and practices as required by common law, industry standards and state and federal law. Plaintiff Hays also alleged that the notice provided by M.A. Ford was inadequate. He asserted causes of action sounding in negligence, negligence per se, breach of implied contract, unjust enrichment, bailment, and violation of the Iowa Personal Information Security Breach Protection Act. *Hays* Complaint, No. 3:24-cv-00057.

On October 10, 2024, the U.S. District Court for the Southern District of Iowa issued an order Granting in Part the Joint Proposed Scheduling Order. Following the order, on the same day,

Plaintiffs Harter and Hays filed a Consolidated Class Action Complaint (herein "Complaint") captioned *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company Inc.*, No. 3:24-cv-00056-SMR-SBJ. Plaintiffs filed on behalf of themselves and a purported class of "[a]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Breach (the "Class")." (ECF No. 12 ¶ 153). The Complaint alleged M.A. Ford failed to properly protect personal information in accordance with its duties, had inadequate data security, and delayed notifying potentially impacted individuals. The Complaint alleged causes of action sounding in negligence, negligence per se, breach of an implied contract, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief.

On November 25, 2024, M.A. Ford filed a Motion to Dismiss the Complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6). (ECF No. 25, 25-1). Instead of increasing litigation costs, the Parties agreed to attend mediation to explore resolution of the case prior to fully briefing Defendant's Motion to Dismiss. On April 30, 2025, the Parties therefore sought a stay of the pending deadlines to attend mediation (ECF No. 28), which this Honorable Court granted on May 1, 2025 (ECF No. 29-30).

The Parties agreed to exchange informal discovery for settlement purposes. In advance of the mediation, M.A. Ford provided the requested informal discovery addressing the number of individuals impacted by the Data Security Incident nationwide. Plaintiffs did not provide informal discovery relating to the harm they suffered from the Data Security Incident. Class Counsel also investigated the facts relating to the Data Security Incident, analyzed the evidence adduced based on publicly available information, court filings, and information exchanged during settlement discussions, and researched the applicable law with respect to the Plaintiffs' claims against M.A. Ford and potential defenses thereto in preparation for the mediation. On August 26, 2025, the

Parties engaged in a Zoom Mediation conducted by mediator Jill Sperber. After a full day mediation of hard-fought negotiations aided by Ms. Sperber, the Parties were able to reach a resolution.

On August 27, 2025, the parties filed a Joint Status report informing the Court of the successful mediation and requesting thirty (30) days to get their settlement agreement finalized and file their Motion for Preliminary Approval of the proposed class settlement. (ECF No. 41). Over the following weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Toops Decl. ¶ 6. The Parties requested two (2) additional extensions of time to file their approval paperwork, while working through the Settlement Agreement and notices necessary to complete the filings. (ECF No. 43, 45). The Settlement Agreement was finalized on December 15, 2025. *See* Settlement Agreement attached hereto as Exhibit 1. It is Class Counsel's opinion that the Agreement presents a favorable result for the Settlement Class. Toops Decl. ¶ 8.

As set forth in more detail below, the Settlement Agreement, and the efforts of Class Counsel, created exceptional relief for Settlement Class Members: it will make available $425,000 for monetary claims, credit monitoring services, attorneys' fees and costs, the costs of the settlement administration, and Class Representatives' service award. Separate and apart from and in addition to the $425,000 made available, Defendant will also implement business practices changes and data security enhancements designed to safeguard the PII of Settlement Class Members.

**I.     The Settlement Agreement**

After lengthy negotiations, the Parties agreed to settle this matter on behalf of a Class defined as: "[a]ll individuals who received notice from M.A. Ford that their information may have

been compromised as a result of the December 2023 Data Security Incident at M.A. Ford." Exh. 1, ¶ 1.47.

The Settlement provides significant and timely benefits to the Settlement Class Members targeted to remedy the harms caused by the Data Security Incident, including retrospective reimbursement of monetary losses and lost time, cash payments, as well as prospective credit monitoring protection. Toops Decl. ¶ 8.

The Settlement addresses payments for benefits to Settlement Class Members, Notice and Administrative Expenses, attorneys' fees and litigation expenses as awarded by this Honorable Court, and Service Award payments approved by this Honorable Court. Exh. 1 ¶¶ 2.1–2.3, 3.1, 4.1-4.3, 5.1, 7.2, 8.1-8.3, 16.1-16.3. Settlement Class Members may claim one or more of a variety of awards. *Id*.

As detailed hereinafter, under the Settlement, Defendant will pay $425,000 into a non-reversionary Settlement Fund. Exh. 1 ¶¶ 2.1-2.2. Any remaining funds in the Settlement Fund after completion of the claims administration process will be sent to a third-party *cy pres* recipient (agreed upon by the Parties and approved by this Honorable Court) as a *cy pres* distribution. Exh. 1 ¶¶ 1.27, 2.1-2.2, 2.5, 5.1.

Settlement Class Members are all treated equally and are all eligible to apply for the benefits detailed below.

### A. Reimbursement of Documented Monetary Losses and Lost Time

First, Settlement Class Members may claim compensation for "ordinary" Out-Of-Pocket Losses, which includes up to a total of $500.00 per person for documented efforts mitigating against identity theft resulting from the Data Security Incident. Exh. 1 ¶ 4.1. Out-of-Pocket Losses include documented out-of-pocket expenses incurred as a result of the Data Security Incident such

as bank fees, long-distance phone charges, minute-based cell phone charges, data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. *Id*. Other examples of Out-of-Pocket Losses are fees for credit reports, credit services, credit monitoring, or another identity theft insurance product purchased between the date of the Data Security Incident, and the date of the close of the Claims Period. *Id*. ¶ 3.1, 4.2.

In addition to compensation for Ordinary Losses, Settlement Class Members may claim compensation of up to $5,000.00 for "extraordinary" Out-of-Pocket Losses for documented identify theft and verified fraud resulting from the Data Security Incident. Exh. 1 ¶ 4.1. Out-of-Pocket Losses means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred as a result of the Data Security Incident, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft, including professional fees such as attorneys' fees, accountants' fees, and fees for credit repair services, and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring or other mitigative services that were incurred on or between December 12 to 14, 2023 and the Notice Deadline. *Id*. ¶ 1.33,

Settlement Class Members can submit documentation supporting their claims electronically via the Settlement Website or by U.S. Mail. *Id*. ¶ 7.1,

### B. Three Years of Credit Monitoring Services

Next, Settlement Class Members are eligible to enroll in three (3) years of credit monitoring to help them protect against the future threat of identity theft and fraud stemming from the dissemination of their Private Information to cybercriminals. Exh. 1 ¶¶ 3.1-3.6. This benefit is provided regardless of whether the Settlement Class Member submits a claim for reimbursement

of document monetary losses or lost time. *Id*. Settlement Class Members will receive an enrollment code via electronic mail from the Settlement Administrator that can be used to activate credit monitoring services for the full term of three years. *Id*.

### C. Cash Payments

Further, Settlement Class Members are eligible to receive a cash payment, and all Settlement Class Members who submit a claim reimbursement of documented monetary losses or credit monitoring will be automatically deemed to have also claimed the cash payment. *Id*. ¶ 1.38, 5.1 Settlement Class Members may also forgo the other benefits and submit only a claim for the cash payment. *Id*. The amount of the cash payment will be determined by the amount remaining in the Settlement Fund after the Settlement Administrator deducts all other payments that will be made from the Fund. *Id*. Importantly, the cash payment will be increased or decreased on a *pro rata* basis to ensure the Settlement Fund is exhausted. *Id*.

### D. Business Practice Enhancements

In addition to these direct monetary benefits, Defendant has adopted and implemented additional data security measures following the Data Security Incident to further strengthen the security of its systems. Exh. 1 ¶ 8.1. If at any time prior to the Final Approval Hearing Class Counsel has information indicating M.A. Ford is not maintaining the Business Practice Adjustments, the Parties are required to meet and confer to discuss the issue prior to seeking court intervention. *Id*. ¶ 8.3.

### E. Attorneys' Fees, Expenses, and Service Award

*Attorneys' Fees and Costs* – After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and expenses separate from the total of valid claims. Class Counsel intends to seek an attorneys' fees and expenses award of $141,666.67. Exh. 1 ¶ 16.1. The

Notices advise the Settlement Class of these intended requests and further information on how to object. *Id.*

***Service Awards*** – The Agreement calls for reasonable Service Awards for both Class Representatives not to exceed $2,500.00 each, Exh. 1 ¶ 16.3, meant to compensate them for their efforts on the Settlement Class's behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Toops Decl. ¶ 11.

## II. Preliminary Approval and Notice

On January 23, 2026, the Court granted Preliminary Approval of the Class Action Settlement. (ECF No. 52), Preliminary Approval Order. The Court found that the proposed Class Action Settlement was fair, reasonable and adequate, "and warrants preliminary approval." *Id*. at 10. The Court also appointed Plaintiffs Timothy Harter and Kevin Hays as the Class Representatives and appointed Lynn A. Toops, Raina Borrelli, Leigh Montgomery, and J. Gerard Stranch, IV as Class Counsel. *Id*. at 5. Further, the Court approved the forms of notice, which state the amount of fees and service awards that will be requested and approved the plan for disseminating notice to the Settlement Class. *Id*. at 11.

Plaintiffs now move for an Order granting Class Counsel's combined attorneys' fee and expenses in the amount of $141,666.67 and Class Representatives' Service Awards in the amount of $2,500.00.

**LAW AND DISCUSSION**

**III.  The Court should award Class Counsel attorneys' fees from the Settlement Fund in the amount of one-third of the settlement.**

Courts in the Eighth Circuit commonly award attorneys' fees of one-third of the settlement. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming one-third fee); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (same); *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-cv-4321, 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015) (awarding one-third fee and collecting cases awarding one-third fees). Under Rule 23(h) and "the 'common fund' doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds" in a class action. *Tussey v. ABB, Inc.*, No. 06-cv-040305, 2019 WL 3859763, at *2 (W. D. Mo. Aug. 16, 2019) (citing Fed. R. Civ. P. 23(h)); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (holding that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole")). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478.

"In the Eighth Circuit, use of the percentage of the fund method when awarding attorneys' fees in a common fund case is not only approved, but also 'well-established.'" *In re NuvaRing Prod. Liab. Litig.*, No. 4:08-md-1964, 2014 WL 7271959, *2 (E.D. Mo. Dec. 18, 2014). Indeed, in common fund cases, the percentage of the benefit approach is "recommended." *Tussey*, 2019 WL 3859763, at *2; *see also Johnston*, 83 F.3d at 246 (approving percentage method of awarding fees); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir 1999) (same); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (same).

Here, the Court should award Class Counsel attorneys' fees in the amount of $141,666.67,

9

or one-third of the total settlement fund ($425,000.00), which is the fee amount the Settlement Agreement contemplates. Exh. 1, ¶ 16.1. Not only is this amount common in the Eighth Circuit, but it meets the fee-evaluation factors assessed by the Eighth Circuit in determining a reasonable fee. *See Caligiuri*, 855 F.3d at 866. Specifically, in *Caligiuri*, the Eighth Circuit held that it was appropriate in evaluating the fee to look at various factors, including: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed (i.e., whether their fee was fixed or contingent); (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the reaction of the class; and (6) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Caligiuri*, 855 F.3d at 866.

First, the benefit conferred by the Settlement is substantial— a $425,000 common fund. Settlement Class Members are eligible to receive documented monetary losses at $5,000 per Member, as well as three years of credit monitoring services and additional benefits including *pro rata* cash payments. Defendant has also agreed to implement security enhancement protocols to guarantee that Plaintiffs and Settlement Class Members' PII will be better safeguarded in the future.

Second, the risks of litigation for Class Counsel were high. Class Counsel took this case on a purely contingent basis. Toops Decl. ¶ 2. As such, they assumed significant risk of nonpayment or underpayment. This risk of non-payment was quite real, as evidenced by the motion to dismiss filed by Defendant. Class Counsel took on these risks knowing full well their efforts may not bear fruit. Fees were not guaranteed—the retainer agreements Class Counsel has with Plaintiffs do not provide for fees apart from those earned on a contingent basis, and in the case of class settlement, approved by this Honorable Court. *Id*. Class Counsel labored and advanced their

own funds to prosecute the case all at the risk of never being paid for their work or reimbursed for their expenses. Class Counsel devoted their time and energy to this matter, instead of pursuing other income, all at the risk of never getting paid, and at best, being paid at some point, potentially many years down the road. Had Defendant prevailed on the merits, on class certification, or on appeal, Class Counsel might have recovered nothing for the time and expense they invested in representing the Class. "Unquestionably, with high-risk and high-cost cases such as this, contingency fee arrangements are the key to the courthouse for individuals taking on a large corporation." *Tussey*, 2019 WL 3859763, at *4. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866; *see, e.g.*, *Huyer,* 849 F.3d at 399 (approving requested fees of 33% of the settlement fund where all attorneys worked on a contingent basis).

Third, this case involved complexities of data breach that are novel and evolving. Toops Decl. ¶ 16. Although Plaintiffs are confident that the claims here would have prevailed, Plaintiffs faced several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and the Settlement Class Members. The general risks of litigation are further heightened in the data breach arena. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. Class certification is another hurdle that would have to be met. Toops Decl. ¶ 5.

Fourth, the complexity of the case is further shown by the skill of the lawyers involved on both sides of the case. Class Counsel has national class action practices involving many years of complex litigation, but particularly data breach cases of this very type. Toops Decl. ¶ 4 & Ex. A– D (Firm Resume). Class Counsel has been recognized by courts across the country for their skill.

*Id.* On the other side of the case, Defendant is represented by a global data privacy and security law firm dedicated exclusively to representing clients facing information security incidents and are formidable opponents.

Fifth, the requested fee is commensurate with the amount that Class Counsel has been awarded in similar data breach litigation and in class action litigation in general in courts across the country. Toops Decl. ¶ 17. The fee requested here falls well within, or below, the 25% to 36% of common fund fees regularly approved by the Eighth Circuit Courts. *Del Torto v. Centene Mgmt. Co., LLC*, No. 4:19-cv-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (noting that the 35% fee sought by Plaintiffs' counsel approved as "in line with other awards in the Eighth Circuit"); *Tussey*, 2019 WL 3859763, at *4 (explaining that the 33% fee awarded where there was no objection to the fee request by the Class).

Thus, all these factors support the Court's discretion in approving the requested attorneys' fees in the amount of one-third of the settlement, which is an amount routinely awarded in the Eighth Circuit. *See id.; Barfield*, 2015 WL 3460346, at *4 (collecting cases awarding one-third fees).

**IV.   The Court should award Class Counsel reimbursement from the Settlement Fund of expenses incurred in litigating this case to settlement.**

The Court should likewise award Class Counsel reimbursement of the expenses they advanced in litigation in this case, which are reasonable. In addition to fees, "[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved." *Tussey*, 2019 WL 3859763, at *5 quoting Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also Sprague v. Ticonic*, 307 U.S. 161, 166-67 (1939) (recognizing a federal court's equity power to award costs from a common fund)). "Counsel in common fund cases may recover those expenses that would normally be

charged to a fee-paying client." *Tussey*, 2019 WL 3859763, at *5. "Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d) and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Id*. (collecting cases).

Here, Class Counsel has advanced $13,455.73 in expenses for necessary litigation expenses such as filing fees and the costs of mediation. Toops Decl. ¶ 8. As repayment of these expenses was contingent on judgment or settlement, Class Counsel's incentive was to incur only those expenses necessary to resolve the case. *See Tulley*, 2019 WL 3859763, at *5 (noting in general, courts approve requested expense reimbursements because class counsel bring the case on contingent basis, "so they had a strong incentive to keep costs to a reasonable level."). Defendant agreed not to object to a request for up to $141,666.67 in attorneys' fees and litigation expenses as contemplated in the Settlement Agreement. Exh. 1, ¶ 16.1. Because the requested expenses in the amount of $13,455.73 are reasonable, and pursuant to the Settlement Agreement encompassed in the request to award $141,666.67, this Honorable Court should award Class Counsel reimbursement from the Settlement Fund of these expenses incurred in litigating this case to settlement.

**V.     The Court should award the Class Representatives Service Awards from the Settlement Fund of $2,500 Each.**

Apart from Class Counsel, "[a]t the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." 5 *Newberg on Class Actions* § 17:1 (5th ed. 2015). "Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'" *Caligiuri*, 855 F.3d at 867 (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1086 (D. Minn. 2010)). Otherwise, most people could not afford to spend

the time and effort to pursue what would provide only a modest individual recovery for the effort involved but would also benefit thousands of other people who do not have time to expend any time or resources. *See id.* Relevant considerations in determining whether to grant an incentive award include actions plaintiffs took to protect the interest of the class; the degree to which the class has benefitted from those actions; and the amount of time and effort plaintiffs expended in pursuing the litigation. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, this Honorable Court should grant the Class Representatives a service award of $2,500 in recognition of their time and effort spent and the results they obtained on behalf of the absent Settlement Class Members who will receive compensation without ever having to do anything. The Class Representatives regularly consulted with Class Counsel, provided documents and information, reviewed pleadings, and participated in the settlement process. Toops Decl. ¶ 11. Without the Class Representatives' efforts, the $425,000 common fund and benefits for the Class would never have been achieved. Now that the case has achieved a significant recovery the Class Representatives should be rewarded for having obtained this benefit for thousands of other Settlement Class Members. This Honorable Court is well within its discretion to award the requested $2,500 service award, which is less than the amount "regularly" awarded in the Eighth Circuit. *Caligiuri*, 855 F.3d at 867 (explaining that "courts in this circuit regularly grant service awards of $10,000 or greater").

## CONCLUSION

Upon granting final approval to the Settlement, the Court should enter an order awarding from the Settlement Fund the payments of: (1) attorneys' fees and expenses to Class Counsel in the amount of $141,666.67 and (2) a Service Award of $2,500 to Plaintiffs Timothy Harter and Kevin Hays, the Class Representatives.

Dated: March 9, 2026	Respectfully submitted,

/s/ *Amina A. Thomas*
Amina A. Thomas**
Lynn A. Toops*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
athomas@cohenmalad.com
ltoops@cohenmalad.com

J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Leigh S. Montgomery**
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

J. Gerard Stranch, IV**
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss**
Raina C. Borrelli**
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610

15

        Chicago IL, 60611
        Tel: (872) 263-1100
        Facsimile: (872) 263-1109
        sam@straussborrelli.com
        raina@straussborrelli.com

**ATTORNEYS FOR PLAINTIFF**

\* *Pro Hac Vice* forthcoming
\*\*Admitted *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's CM/ECF electronic filing system this 9th day of March 2026.

                                          */s/ Amina A. Thomas*
                                          Amina A. Thomas