# Exhibit 1

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") is made and entered into by and among the following Parties (as defined below): Timothy Harter and Kevin Hays ("Plaintiffs" or "Representative Plaintiffs"), on behalf of themselves and each of the Settlement Class Members (as defined below), and Defendant M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc., an Iowa Corporation ("M.A. Ford" or "Defendant," as defined below). Plaintiffs and Defendant are referred to here as the "Settling Parties" or "Parties" and each individually as a "Party." The Settlement Agreement is intended by the Settling Parties to resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions set forth below and approval by the United States District Court for the Southern District of Iowa (the "Court").

<u>RECITALS</u>

WHEREAS, the Parties hereto state the following:

In December 2023, cybercriminals gained access to M.A. Ford's network systems, possibly accessing the personally identifiable information ("PII") of certain M.A. Ford current or former employees (herein referred to as "Data Security Incident" and within the proposed Class definition as "Data Breach").

On July 8, 2024, Plaintiff Timothy Harter filed his Class Action Complaint, captioned *Timothy Harter v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00056-SMR-SBJ in the Southern District of Iowa. On July 11, 2024, Plaintiff Kevin Hays filed his Class Action Complaint, captioned *Kevin Hays v. M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00057-SMR-HCA. Shortly thereafter, Plaintiff Kevin Hays dismissed his suit and joined the *Harter* action. On October 10, 2024, Plaintiffs Harter and Hays filed a Consolidated Class Action Complaint captioned *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00056-SMR-SBJ.

Plaintiffs filed on behalf of themselves and a purported class of "[a]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Breach (the "Class") (ECF 12, ¶ 153.) The Complaint alleged that M.A. Ford failed to properly protect personal information in accordance with its duties, had inadequate data security, and delayed notifying potentially impacted individuals. The Complaint alleged causes of action for negligence, negligence per se, breach of an implied contract, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief.

On November 25, 2024, M.A. Ford filed a motion to dismiss the complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6). (ECF No. 25, 25-1). Shortly thereafter, the Parties agreed to attend mediation to explore informal resolution of the case. The Parties further agreed to exchange informal discovery for settlement purposes. In advance of the mediation, M.A. Ford provided certain informal discovery that addressed the number of individuals impacted by the Data Security Incident nationwide. Plaintiffs similarly provided informal discovery relating to the harms they alleged to have suffered from the Data Security Incident.

1

On August 26, 2025, the Parties engaged in a Zoom mediation conducted by mediator Jill Sperber. After a full day mediation of hard-fought negotiations aided by Ms. Sperber, the Parties were able to reach a resolution. The agreed resolution or settlement is memorialized in this Settlement Agreement.

Class Counsel has investigated the facts relating to the Data Security Incident, analyzed the evidence adduced based on publicly available information, court filings, and information exchanged during settlement discussions, and researched the applicable law with respect to the Plaintiffs' claims against M.A. Ford and potential defenses thereto.

M.A. Ford denies all wrongdoing whatsoever and denies all of the claims and contentions alleged in the Complaint. This Settlement Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of M.A. Ford with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or any infirmity of the defenses that M.A. Ford has asserted or would assert. M.A. Ford has considered the uncertainty and risks inherent in any litigation and in the Action. M.A. Ford has therefore determined that it is desirable and beneficial that the action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

Based upon their investigation as set forth above, Class Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and in the best interests of Plaintiffs and Settlement Class Members, and have agreed to settle the claims relating to the Data Security Incident pursuant to the terms and provisions of this Agreement after considering (a) the substantial benefits that Settlement Class Members will receive from the Settlement, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the settlement of this litigation to be consummated as provided by the terms of this Agreement.

It is the intention of the Parties to resolve the Action and all claims which they have between them on the terms set forth below.

<u>TERMS OF THE SETTLEMENT</u>

IT IS HEREBY STIPULATED AND AGREED, by and among the Representative Plaintiffs (individually and on behalf of the Settlement Class Members), by and through their duly authorized counsel and M.A. Ford, by and through its duly authorized counsel, that the Action and all matters that have been, could have been or could be raised in the Action are hereby settled and compromised, that the Action will be dismissed on the merits and with prejudice as to M.A. Ford based upon the terms and conditions set out in this Settlement Agreement (including the Release), subject to the Court's approval and such approval becoming Final.

1.    <u>Definitions</u>

As used in this Settlement Agreement, the following capitalized terms have the following meanings, unless a section or subsection of this Settlement Agreement provides

Doc ID: 0db3c3a1cf1d9a9e0065a9b5208f9e76355ffd7b66

otherwise. The definitions in this Agreement are intended to have substance and effect and are considered a material part of all terms and conditions in this Agreement.

1.1    "Action" means the nationwide class action lawsuit captioned *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.,* Case No. 3:24-cv-00056-SMR-SBJ (S.D. Iowa), currently pending before the Honorable Chief Judge Stephanie M. Rose.

1.2    "Affiliates" means, with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with such entity. For purposes of this definition, "control" when used with respect to any entity means an ownership interest of at least twenty-five percent (25%) and/or the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities by contract or otherwise.

1.3    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and its exhibits attached hereto, including any subsequent written amendments to the Settlement Agreement and Release and/or to its exhibits.

1.4    "M.A. Ford's Counsel" means H. Nellie Fitzpatrick and Jonathan Tobin of Cipriani & Werner, P.C.

1.5    "Approved Claim" means the timely submitted Claim Form by a Settlement Class Member that has been approved by the Settlement Administrator.

1.6    "Attested Time" means time spent taking remedial measures in response to the Data Security Incident, as provided in Section 4 of this Agreement.

1.7    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and/or Friday, excluding holidays observed by the federal government or the state of Iowa.

1.8    "Business Practice Adjustments" means the security business practice adjustments that M.A. Ford has made to its information security policies and procedures following the Data Security Incident, including specific business practice and remedial measures within the following general categories: (i) enhanced data security policies, (ii) enhanced security measures, (iii) further restricting access to personal information, and (iv) enhanced monitoring and response capability, as provided in Section 8 of this Agreement.

1.9    "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, counter-claims, cross-claims, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses of any sort whatsoever, whether in law, in admiralty or in equity, and whether based on a United States federal, state or foreign statutory or common-law United States federal, state or foreign statutory or common-law right of action or

3

otherwise, foreseen or unforeseen, matured or unmatured, known, accrued or not accrued, existing now or to be created in the future, including "Unknown Claims" (as defined below).

1.10    "Claim Form" means the form(s) Settlement Class Members must submit to be eligible for reimbursement of Out-of-Pocket Losses, Attested Time, and/or to claim Credit Monitoring Services which is attached hereto as **Exhibit C**.

1.11    "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur ninety (90) days after the Notice Deadline.

1.12    "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

1.13    "Class Counsel" means Lynn A. Toops of CohenMalad, LLP, Raina C. Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC.

1.14    "Court" means the United States District Court for the Southern District of Iowa.

1.15    "Credit Monitoring Services" means the services described in Section 3.

1.16    "Data Breach" and/or "Data Security Incident" means the unauthorized access to M.A. Ford's network including potential access and/or acquisition of certain information on M.A. Ford's network that occurred on or about December 12 to 14, 2023.

1.17    "Data Privacy Laws" means any law or industry self-regulatory program concerning the collection, use, analysis, retention, storage, protection, transfer, disclosure, disposal or processing of Personal Information.

1.18    "Defendant" means all persons and entities named as defendants at any time in the Action.

1.19    "Effective Date" means one Business Day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and Judgment or one (1) Business Day following entry of the Final Approval Order and Judgment if no parties have standing to appeal; or (ii) if any appeal, petition, request for rehearing, or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

1.20    "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments to be paid from the Settlement

Doc ID: 0db3c3a1cf1d9a9e

Fund, as set forth in Section 16.

1.21    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

1.22    "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, in substantially the same form as the one attached hereto as **Exhibit E**, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Action with prejudice, otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Settlement Agreement. Class Counsel and M.A. Ford's Counsel will work together on a proposed Final Approval Order and Judgment, which M.A. Ford must approve before filing.

1.23    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

1.24    "Judgment" means the final judgment to be entered by the Court.

1.25    "Litigation Costs and Expenses" means the costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action.

1.26    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court, (iv) Fee Award and Costs approved by the Court, and (v) Out-of-Pocket Losses, Attested Time Claims, and Credit Monitoring Services.

1.27    "Non-Profit Residual Recipient" means a non-profit organization approved by the Court to receive any Net Settlement Funds that remain following the distribution of Settlement Payments for Approved Claims.

1.28    "Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members pursuant to the Preliminary Approval Order, substantially in the form attached hereto as **Exhibits A and B**.

1.29    "Notice Deadline" means the last day by which Notice must issue to the Settlement Class Members, and will occur thirty (30) days after entry of the Preliminary Approval Order.

1.30    "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, identifying and locating Settlement Class Members, processing claims, determining the eligibility of any

Doc ID: 0db3c3a1cf1d9a9e

person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.31    "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be thirty (30) days after the Notice Deadline.

1.32    "Opt-Out Deadline" is the last day on which a Settlement Class Member may file a request to be excluded from the Settlement Class, which will be thirty (30) days after the Notice Deadline.

1.33    "Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred as a result of the Data Security Incident, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft, including professional fees such as attorneys' fees, accountants' fees, and fees for credit repair services, and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring or other mitigative services that were incurred on or between December 12 to 14, 2023 and the Notice Deadline.

1.34    "Parties" or "Settling Parties" means all Parties to this Settlement Agreement.

1.35    "Person" means an individual or legal entity or their respective successors or assigns.

1.36    "Personal Information" or "Personally Identifiable Information" or "PII" means (i) all data and information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, to a particular individual or is otherwise subject to any applicable Data Privacy Laws related to the privacy or security of information associated with an individual, and (ii) that was stored on M.A. Ford's systems and potentially accessed without authorization during the Data Security Incident.

1.37    "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court preliminarily approves the Settlement under Federal Rule of Civil Procedure 23(e)(2) and that is consistent with all material provisions of this Settlement Agreement, substantially in the form of the Notice attached as **Exhibit D**. Class Counsel and M.A. Ford's Counsel will work together on a proposed Preliminary Approval Order, which M.A. Ford must approve before filing.

1.38    "Pro Rata Cash Payment" means the cash payments of the remaining Net Settlement Fund to each Settlement Class Member after the distribution of the Fee Award and Costs, Notice and Administrative Expenses, Service Award Payments, Credit Monitoring Services, Out-of-Pocket Losses, and Attested Time Claims as set forth

Doc ID: 6386f9f3a2219300965a9052f08f9a76355ffd76b26

in Section 5 of this Settlement Agreement.

1.39    "Release" means the release set forth in Section 15 of this Settlement Agreement.

1.40    "Released Claims" means any and all Claims, debts, demands, actions, causes of action, specialties, covenants, contracts, variances, damages, executions, rights, suits, sums, accounts, reckonings, presentments, extents and any other liabilities, fixed or contingent, matured or not matured, of or by the Settlement Class, or any member or representative of the Settlement Class, as against the Releasees, including both known claims and "Unknown Claims" (as defined below), whether class or individual in nature, that were asserted, could have been asserted, could in the future be asserted, or are related to the claims that were, could have been, or could in the future be asserted, related to the Data Security Incident by the Settlement Class, or by any member or representative of the Settlement Class (including, without limitation, any claims for alleged violations of federal or state statutory or common law, or any other law, and for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), by reason of, arising out of, based on, or in any way relating to the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances, or other matters referenced in or relating to the Data Security Incident. It is understood that any in-house attorneys for M.A. Ford are intended to be included in and fully released hereunder.

1.41    "Releasee" means each and every one of, and "Releasees" means all of, (i) M.A. Ford and (ii) the past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house and outside counsel including, without limitation, M.A. Ford's Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, actuaries, consultants, fiduciaries, representatives, service providers, successors-in-interest, parents, owners, Subsidiaries, Affiliates, trustees, insurance carriers, reinsurers, estates, heirs, executors, beneficiaries, trusts, and assigns of, including all persons controlling, controlled by, or under common control with, any or all of the above persons or entities referenced in this paragraph.

1.42    "Releasor" means each and every one of, and "Releasors" means all of, (i) Representative Plaintiffs, (ii) all other Settlement Class Members, (iii) their respective past or present parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures, Subsidiaries, assigns, any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiffs or any other Settlement Class Member and (iv) the respective past and present officers, directors, employees, officials, members, partners, estates, heirs, executors, beneficiaries, trusts, next of kin, administrators, and assigns of any or all of the above persons or entities referenced in this paragraph.

7

1.43    "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

1.44    "Service Award Payment" means compensation awarded by the Court and paid to the Representative Plaintiffs in recognition of their role in this litigation.

1.45    "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.46    "Settlement Administrator" means Simpluris, Inc. Class Counsel and M.A. Ford's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.47    "Settlement Class" means all individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford. Excluded from the Settlement Class are: (1) the judges presiding over the Action, members of their staff, and members of their direct families; (2) Defendant and any other Releasee; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

1.48    "Settlement Class List" means the list generated by M.A. Ford containing the full names, current or last known addresses, which M.A. Ford shall provide to the Settlement Administrator within fourteen (14) days of the Preliminary Approval Order.

1.49    "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

1.50    "Settlement Class Representatives" or "Representative Plaintiffs" means Timothy Harter and Kevin Hays.

1.51    "Settlement Fund" means four hundred twenty-five thousand U.S. dollars and zero cents ($425,000.00) to be paid by M.A. Ford as specified in Section 2 of this Agreement, including any interest accrued thereon after payment. The payment of $425,000.00 is the limit and full extent of M.A. Ford's payment of any and all monetary obligations with respect to the Settlement. For avoidance of any confusion, this limit and extent includes with respect to any and all forms of relief provided to Class Members by M.A. Ford pursuant to this Settlement as well as with respect to Fee Awards and Costs.

1.52    "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check and/or electronic payment to a Settlement Class Member pursuant to Section 6.

Doc ID: 0db3c3a1cf1d9a9e...

1.53    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, this Agreement, Plaintiff's motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiff's Fee Application, and the operative complaints in the Action. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed. The Settlement Website URL shall be approved by M.A. Ford prior to publication.

1.54    "Subsidiaries" means with respect to any entity, any corporation, limited liability company, partnership or other entity of which such entity owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions with respect to such corporation, limited liability company, partnership or other entity.

1.55    "Successor" means, with respect to a natural person, that person's heir, and, with respect to an entity, any other entity that through merger, buyout, or any other means, acquires all of that entity's duties, rights, obligations, shares, debts, or assets.

1.56    "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund.

2.    Settlement Fund

2.1    Establishment of Settlement Fund.  Within thirty (30) days of the Preliminary Approval Order, M.A. Ford shall deposit the Settlement Fund into an account established and administered by the Settlement Administrator at a financial institution agreed upon by the Settlement Administrator and M.A. Ford.

2.2    Non-Reversionary. The Settlement Fund shall be non-reversionary except as set forth herein. As of the Effective Date, all rights of M.A. Ford in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Section 14.

2.3    Qualified Settlement Fund. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning

Doc ID: 6386f91c3e21980065a99525f879a76358f4b76b26

of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. Upon written request by any of the Parties, the Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement.

2.4    Custody of Settlement Fund. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Section 14.

2.5    Use of the Settlement Fund. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee Award and Costs; (v) Credit Monitoring Services; (vi) reimbursement for Out-of-Pocket Losses and Attested Time; (vii) Pro Rata Cash Payments, and (viii) any remaining Settlement Funds to one or more Non-Profit Residual Recipients. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

2.6    Taxes and Representations. Taxes and Tax-Related Expenses relating to the Settlement Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court.  Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund to any Settlement Class Representative or any Settlement Class Member. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to them of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.    Credit Monitoring Services

Doc ID: 6386f9fd4e21980065a90522089a76055fb7b626

3.1    Credit Monitoring Services. Credit Monitoring Services shall be provided by CyEx. CyEx will provide Services to Settlement Class Members who claim Credit Monitoring Services and enroll pursuant to instructions provided to them, including:

    a.  Daily credit monitoring of the Settlement Class Members' credit file at all three (3) major credit reporting agencies (Experian, Equifax and TransUnion);

    b.  Identity theft insurance, which covers certain identity theft related expenses incurred by Settlement Class Members up to a limit of one million U.S. dollars and zero cents ($1,000,000.00);

    c.  Identity restoration services that provide professional fraud resolution assistance to Settlement Class Members who experience identity theft or fraud, helping them with identity recovery and restoration; and

    d.  Password Protection from Dashlane Password Manager, which will help Settlement Class Members protect their passwords and make it easy and secure to access passwords.

3.2    Selection of Credit Monitoring Services. For a period of no later than ninety (90) days after the Notice Date, Settlement Class Members may submit to the Settlement Administrator a Claim Form selecting Credit Monitoring Services in a manner consistent with the Claim Form and Notice. The Settlement Administrator shall review all claims for Credit Monitoring Services to validate that each Credit Monitoring Services claimant is a Settlement Class Member. Ambiguities or deficiencies on the face of the Claim Form shall be resolved by the Settlement Administrator. To the extent there is any ambiguity with respect to a Settlement Class Member's election of Credit Monitoring Services, and the Settlement Administrator cannot resolve the ambiguity, the ambiguous Claim Form shall default to Credit Monitoring Services for the Settlement Class Member submitting the Claim Form or on whose behalf the Claim Form was submitted by an authorized representative. For deficiencies, the Settlement Administrator shall ask the Settlement Class Member to cure the deficiency, and in doing so, may use its discretion to determine the most efficient and effective means of communicating with the Settlement Class Member, whether by e-mail, telephone, or mail. Disputes with respect to Claim Forms shall be resolved by the Settlement Administrator.

3.3    Activation of Credit Monitoring Services. Pursuant to Section 3, the Settlement Administrator shall send to each valid Credit Monitoring Services claimant, via e- mail, or for claimants with no e-mail address by U.S. Mail, an activation code to be used to activate Credit Monitoring Services via the Simpluris website. Simpluris shall provide Credit Monitoring Services to all valid Credit Monitoring Services claimants who timely activate those services.

Doc ID: 6386f9f34e21f980065a905250f9a76058f47b26

3.4    Dedicated Simpluris Website. On or before the Notice Date, Simpluris shall establish a dedicated website or web page that provides instructions on how to submit a Credit Monitoring Services claim and the activation processes, and sets forth a general description of the nature of the Credit Monitoring Services to be provided as part of this Settlement.

3.5    Time period. Credit Monitoring Services shall be provided for a period of at least three (3) years starting from the later of (i) the date a Settlement Class Member enrolls for Credit Monitoring Services or (ii) the date that is five (5) Business Days after the Effective Date.

3.6    Identity Restoration Services. Simpluris shall also offer identity restoration services to all Settlement Class Members (whether or not they claim Credit Monitoring Services), for a period of three (3) years starting from the later of (i) the date a Settlement Class Member enrolls for Credit Monitoring Services or (ii) the date that is five (5) Business Days after the Effective Date. Identity restoration services provide for professional fraud resolution assistance by a dedicated, U.S.-based fraud resolution agent, who assist Settlement Class Members who experience identity theft or fraud with the steps to identity recovery and restoration.

4.    <u>Reimbursement for Out-Of-Pocket Losses and Attested Time</u>

4.1    Reimbursement for Out-of-Pocket Losses. All Settlement Class Members may submit a claim for up to five thousand U.S. dollars and zero cents ($5,000.00) for reimbursement of "extraordinary" Out-of-Pocket Losses for documented identity theft and verified fraud resulting from the Data Security Incident and up to five-hundred U.S. dollars and zero cents ($500.00) for documented "ordinary" Out-of-Pocket Losses for efforts mitigating against identity theft resulting from the Data Security Incident. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form (either in paper form or on the Settlement Website) that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the costs, if the nature of the costs is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. Self- prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. A legal guardian for a Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a minor Claim Form seeking reimbursement of Out-of-Pocket Losses on the minor's behalf.

4.2    Assessing Claims for Out-of-Pocket Losses. The Settlement Administrator shall verify that each person who submits an Out-of-Pocket Losses Claim Form is a Settlement Class Member and shall have the sole discretion and authority to

Doc ID: 0db3c3a1cf1d9a9e...

determine whether and to what extent an Out-of-Pocket Costs Claim Form reflects valid Out-of-Pocket Costs actually incurred that result from the Data Security Incident. In assessing what qualifies as "resulting from," the Settlement Administrator will consider (i) whether the timing of the costs occurred on or after December 2023; and (ii) whether the Personal Information purportedly used to commit identity theft or fraud consisted of the type of Personal Information identified in M.A. Ford's notices of the Data Security Incident. Costs expended for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after December 2023 shall be presumed "reasonably incurred." The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

4.3    Reimbursement for Attested Time.  All Settlement Class Members may submit a claim for reimbursement for Attested Time for up to five (5) hours at twenty-five U.S. dollars and zero cents ($25.00) per hour. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. Claims for Attested Time are capped at one hundred and twenty-five U.S. dollars and zero cents ($125.00) per individual. A claim for Attested Time may be combined with reimbursement for Out-of-Pocket Losses but in no circumstance will a Settlement Class Member be eligible to receive more than the six thousand U.S. dollars and zero cents ($6,000.00) individual cap, as set forth in Section 7 below.

4.4    Assessing Claims for Attested Time. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments for Attested Time, but may consult with Class Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

Doc ID: 0db3c3a1cf1d9a9e

4.5     Disputes. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations. The Settlement Administrator shall have the sole discretion and authority to determine whether the Settlement Class Member has cured the deficient claim such that it reflects valid Out-of-Pocket Losses actually incurred that result from the Data Security Incident.

5.    Pro Rata Cash Payment

5.1     Pro Rata Cash Payment. After the distribution of the Fee Award and Costs, Notice and Administrative Expenses, Service Award Payments, Credit Monitoring Services, Out-of-Pocket Losses, and Attested Time Claims, the Settlement Administrator will make pro rata cash settlement payments of the remaining Settlement Fund to each Settlement Class Member. Any Net Settlement Funds that remain after the distribution and reissuance of all payments from the Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will be distributed to a Non-Profit Residual Recipient.

6.    Payments to Settlement Class Members

6.1     Payment Timing. Payments for Approved Claims for reimbursement for Out-of-Pocket Losses, Attested Time, and/or Cash Payments shall be issued in the form of a check mailed and/or an electronic payment as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

6.2     Timing. Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Settlement Class Member reminding him/her of the deadline to cash such check.

6.3     Returned Checks. For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator

Doc ID: 6386f9f3de21f90065a90625f87a0635f7d76b26

as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time.

6.4    Uncashed Checks. To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class Member by e- mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissue a check or mail the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time. In no event shall any funds revert to Defendant. If funds remain after the above efforts are made, then those remaining funds shall be distributed to a neutral third-party charitable organization related to data privacy as agreed upon by the Parties in good faith.

6.5    Deceased Settlement Class Members. If the Settlement Administrator is notified that a Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Settlement Class Member's estate upon receiving proof the Settlement Class Member is deceased and after consultation with Class Counsel.

7.    <u>Claims, Caps, and Distribution of Settlement Funds</u>

7.1    Submission of Electronic and Hard Copy Claims. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. Defendant and Releasees shall not be entitled to access information regarding which Settlement Class Members submitted a Claim Form or otherwise participated in the Settlement. M.A. Ford's Counsel may obtain this information on a showing of good cause, including but not limited to any disputes arising out of the claims process.

7.2    Individual Caps. Settlement Class Members are subject to an individual aggregate cap of six thousand U.S. dollars and zero cents ($6,000.00) for payments made under the Settlement for Out-of-Pocket Losses and Attested

Doc ID: 6386f913ee21930065a905250f9a76355f7f6b26

Time.

Order of Distribution of Funds. The Settlement Administrator must first use the Net Settlement Fund to make payments for Approved Claims for Out-of-Pocket Losses, followed by Approved Claims for Attested Time. The Settlement Administrator shall then use the remaining funds in the Net Settlement Fund to make distributions for Pro Rata Cash Payments.

7.3     Pro-Rata Contingencies. In the event that the aggregate amount of all payments for reimbursement of Out-of-Pocket Losses exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for Out-of-Pocket Losses does not exceed the Net Settlement Fund. In the event that (i) the aggregate amount of Approved Claims for Out-of-Pocket Losses does not exceed the Net Settlement Fund, and (ii) the aggregate amount of all Approved Claims for Attested Time is greater than the Net Settlement Fund, less the aggregate amount of Approved Claims for Out-of-Pocket Losses, then the value of each Settlement Class Members' payment for Attested Time shall be reduced on a pro rata basis such that the aggregate value of all Approved Claims for Out-of-Pocket Losses and Attested Time do not exceed the Net Settlement Fund. In the event that the aggregate amount of all payments for reimbursement of Out-of-Pocket Losses and Attested Time exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for Out-of-Pocket Losses and Attested Time does not exceed the Net Settlement Fund. All pro rata determinations required by this Section shall be performed by the Settlement Administrator.

8.     Business Practice Adjustments

8.1     Business Practice Adjustments. M.A. Ford has made business practice adjustments to address its information security posture following the Data Security Incident. These Business Practice Adjustments are specific business practice and remedial measures within the following general categories: (i) enhanced data security policies, (ii) enhanced security measures, (iii) further restricting access to personal information, and (iv) enhanced monitoring and response capability.

8.2     Modification and Costs. The Parties acknowledge that technical requirements for securing information evolve and change dynamically. In the event that technological or industry developments, or intervening changes in law or business practices render specific Business Practice Adjustments obsolete or make compliance by M.A. Ford with them unreasonable or technically impractical, M.A. Ford may modify its business practices as necessary to ensure appropriate security practices are being followed. All costs associated with implementing the Business Practice Adjustments will be borne by M.A. Ford separate and apart from the Settlement Fund.

8.3    Enforcement. M.A. Ford has attested herein to the Business Practice Adjustments. Such attestation herein cannot be used for any purpose other than enforcement of this Settlement Agreement. If at any time prior to the Final Approval Hearing Class Counsel has information indicating M.A. Ford is not maintaining the Business Practice Adjustments, the Parties are required to meet and confer to discuss the issue prior to seeking court intervention. To the extent Court intervention is required, the Parties agree to cooperate in seeking the Court's permission to file a description of the Business Practice Adjustments and any discussion of the Business Practice Adjustments under seal.

9.    <u>Taxes</u>

9.1    Awards to Settlement Class Members. For tax purposes, Awards made to Settlement Class Members who are current or former M.A. Ford employees shall be allocated as non-wage payments.

9.2    Individual Responsibilities. Representative Plaintiffs and each individual Settlement Class Member that receives a payment will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Settlement Agreement. Representative Plaintiffs, on behalf of the Settlement Class Members, acknowledge and agree that they have not relied upon any advice from M.A. Ford or Class Counsel as to the taxability of the payments received pursuant to the Settlement Agreement. M.A. Ford and Class Counsel shall have no responsibility for any taxes, interest penalties or other amounts due with respect to any payments made pursuant to the Settlement Agreement.

9.3    Settlement Administrator. The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to the Settlement Agreement, and shall report the payments in accordance with applicable law.

10.    <u>Settlement Class Notice</u>

10.1    Notice. Within fourteen (14) days after the date of the Preliminary Approval Order, M.A. Ford shall provide the Settlement Class List to the Settlement Administrator. Within fourteen (14) days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. Notice shall be disseminated via U.S. mail to all Settlement Class Members. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline.

11.    <u>Procedures for Opt-Outs and Objections to the Settlement</u>

11.1    Opt-Outs. The Notice shall explain the procedure for Settlement Class

Doc ID: 0db3c3a1cf1d9a9e...

Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than thirty (30) days after the Notice Deadline. The Request for Exclusion must include the name of the Action, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Section will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

11.2    Objections. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Settlement Administrator postmarked no later than thirty (30) days after the Notice Deadline.  The written objection must include (i) the name of the Action;

(ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this section waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

12.    <u>Duties of the Settlement Administrator</u>

12.1    Duties of Settlement Administrator. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

a.    Creating, administering, and overseeing the Settlement Fund;

b.    Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.     Providing Notice to Settlement Class Members via U.S. mail;

d.    Establishing and maintaining the Settlement Website;

e.    Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions

Doc ID: 6386f9f34a21f980065a905250f9a76358f4d7b06

of Settlement Class Members who call with or otherwise communicate such inquiries within one (1) Business Day;

f.   Responding to any mailed or e-mailed Settlement Class Member inquiries within one (1) Business Day;

g.   Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

h.   Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel and M.A. Ford's Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and to M.A. Ford's Counsel;

i.   Providing Credit Monitoring Services to receive and send activation codes within thirty (30) days of the Effective Date;

j.   After the Effective Date, processing and transmitting Settlement Payments to Settlement Cass Members;

k.   Providing weekly or other periodic reports to Class Counsel and M.A. Ford's Counsel that include information regarding the number of Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel or M.A. Ford's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

l.   In advance of the Final Approval Hearing, preparing a sworn declaration to submit to the Court that: (i) attests to implementation of the Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

m.   Performing any function related to settlement administration at the agreed-upon instruction of Class Counsel or M.A. Ford's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

Doc ID: 0db3c3a1cf1d9a9e

12.2    Limitation of Liability. The Parties, Class Counsel, and M.A. Ford's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

12.3    Indemnification. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and M.A. Ford's Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

13.    <u>Preliminary Approval, Final Approval, and Jurisdiction</u>

13.1    Certification of the Settlement Class. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. The Parties also stipulate to the appointment of Lynn A. Toops of CohenMalad, LLP, Raina C. Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel. This stipulation is strictly for the purposes of this Settlement Agreement as provided herein, and shall not and may not be used in any other proceeding as any authority for or against certification of any other class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.

13.2    Preliminary Approval. Within thirty (30) days of execution of this Settlement Agreement, Class Counsel shall file a motion for preliminary approval of the settlement, unless an enlargement of that time is reasonably needed by one of the parties hereto. M.A. Ford shall be provided with the motion for preliminary approval of the settlement for approval prior to filing.

Doc ID: 6386f91d4e2193006c5a905250f9a76355fb76b26

13.3    Final Approval. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement Agreement within ten (10) days of the Final Approval Hearing, to be issued following the Final Approval Hearing; within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least ninety (90) days after M.A. Ford notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

13.4    Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Settlement Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

14.    <u>Modification or Termination of this Settlement Agreement</u>

14.1    Modification. The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

14.2    Decertification of the Settlement Class if Settlement Not Approved. If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; or (2) the Effective Date does not occur, the certification of the Settlement Class shall be void ab initio. M.A. Ford reserves the right to contest class certification for all other purposes. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition, the fact that M.A. Ford did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification.

14.3    Termination. Settlement Class Representatives and Defendant shall have the right to terminate this Agreement by providing written notice of their or its election to

Doc ID: 6386f91ce21980065a90525089a76355f676b26

do so ("Termination Notice") within seven (7) days of: (1) the Court's refusal to issue the Preliminary Approval Order; or (2) within fourteen (14) days of any of the following: (i) determination that a total of ten percent (10%) of Settlement Class Members object to the Settlement or Fee Application, (ii) the Court's refusal to enter the Final Approval Order and Judgment, or (iii) the date upon which the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court.

14.4    Effect of Termination. In the event of a termination as provided in Section 14.3, this Agreement and the Settlement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement or the Settlement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

15.    <u>Releases</u>

15.1    The Release. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Settlement Class Representatives and Settlement Class Members shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Releasees.

15.2    Unknown Claims. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised related to the Data Security Incident and that any of the Settlement Class Representatives or Settlement Class Members do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release Releasees or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Settlement Class Representatives and Settlement Class Members shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, each of the Settlement Class Representatives and Settlement Class Members shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar,

Doc ID: 6386f9f3e21f90065a9052f7e76355fd7b6b26

comparable or equivalent to Section 1542 of the California Civil Code. The Settlement Class Representatives and Settlement Class Members acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Section.

15.3    Bar to Future Suits. Upon entry of the Final Approval Order and Judgment, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Releasees or based on any actions taken by any of the Releasees that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

16.    <u>Attorneys' Fees, Costs, Expenses, and Service Awards</u>

16.1    Attorneys' Fees and Costs and Expenses. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application to be paid from the Settlement Fund. M.A. Ford agrees not to oppose Class Counsel's request for an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of litigation costs and expenses not to exceed one hundred forty-one thousand six hundred sixty-six U.S. dollars and sixty-seven cents ($141,666.67). Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to M.A. Ford and the Settlement Administrator a properly completed and duly executed IRS Form W-9. If approved by the Court, Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator from the Settlement Fund, in the amount approved by the Court, no later than seven (7) days after the day on which the Court enters the Final Approval Order.

16.2    Allocation. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs among Plaintiff's counsel and any other attorneys for Plaintiff. M.A. Ford shall have no liability or other responsibility for allocation of any such attorneys' fees and Litigation Costs and Expenses.

16.3    Service Award Payments. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application that will include a request for Service Award Payment for the Settlement Class Representative in recognition for their contributions to this Action. M.A. Ford agrees not to oppose Class Counsel's request for a service award not to exceed two thousand five hundred U.S. dollars and zero cents ($2,500.00) per Class Representative, for a total of $5,000.00 in Service Award Payments. If approved by the Court, the Settlement Administrator shall make the Service Award Payments to the Settlement Class Representatives from the Settlement Fund. Such Service Award Payment shall be

Doc ID: 6386f91f4a2193b0065a90525289a76355ff47b26

paid by the Settlement Administrator from the Settlement Fund, in the amount approved by the Court, no later than thirty (30) days after the Effective Date. Any Party receiving a Service Award Payment shall and hereby does release any and all Claims of any kind against M.A. Ford under federal, state, or local law and statute, including, but not limited to, the California Labor Code, California Civil Code, California Constitution, and the California Private Attorneys General Act.

16.4    No Effect on Agreement. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

17.    <u>No Admission of Liability</u>

17.1    No Admission of Liability. Nothing relating to this Settlement Agreement, or any communications, papers, or orders related to the Settlement Agreement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or any Releasee of any liability, culpability, negligence, misconduct or other wrongdoing toward the Representative Plaintiffs, the Settlement Class Members, or any other Person, and Defendant and each Releasee specifically disclaims and disputes any liability, culpability, negligence, misconduct or other wrongdoing toward the Representative Plaintiffs, the Settlement Class Members, or any other Person, or that class certification is appropriate in this or any other matter. This Agreement, and any communications, papers, or orders related to the settlement, may not be cited to, used, or admitted as evidence of liability or that class action certification is appropriate. There has been no determination by any court as to the merits of the claims asserted by the Representative Plaintiffs against Defendant or as to whether a class should be certified, other than for settlement purposes only.

17.2    No Use of Agreement. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by M.A. Ford in the Action or in any proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be, or may be used, in evidence as an admission, concession or presumption that class certification is appropriate in this the Action.

18.    <u>Miscellaneous Provisions</u>

18.1    Best Efforts.    The Parties and their counsel agree to use their best efforts to effectuate the purposes and intent of this Settlement Agreement and obtain Court

Doc ID: 63b6f9dba21f80065a8062508f9a76358fb76b26

approval of this Settlement Agreement, subject to M.A. Ford's rights to terminate the Settlement Agreement, as provided herein.

18.2    Representation by Counsel. The Representative Plaintiffs and M.A. Ford represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Settlement Agreement and have been given the opportunity to review independently this Settlement Agreement with such legal counsel and agree to the particular language of the provisions herein.

18.3    Exhibits. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. In the event of any difference between the terms of the Settlement Agreement and any of the exhibits, the terms of the Settlement Agreement shall control.

18.4    Deadlines. If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

18.5    Final Resolution. The Parties to this Settlement Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Representative Plaintiffs, any other Class Members and their attorneys against the Releasees with respect to the Released Claims. Accordingly, Representative Plaintiffs and M.A. Ford agree not to assert in any forum that the Action were brought by the Representative Plaintiffs or defended by M.A. Ford in bad faith or without a reasonable basis. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including during a mediation conducted by a registered mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

18.6    Headings. The headings herein are used for the purpose of convenience only and are not meant to have legal effect. In the event of a dispute concerning the terms and conditions of this Settlement Agreement, the headings shall be disregarded.

18.7    No Precedential Value. The Parties agree and acknowledge that this Agreement carries no precedential value.

18.8    Fair and Reasonable. The Parties and their counsel believe this Settlement Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arm's-length negotiations.

18.9    Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or

Doc ID: 6386f9f34e21978006a905250a9a76355fb7b626

remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any provision or breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other provision or any other prior or subsequent breach of this Settlement Agreement.

18.10   Severability. Should any part, term or provision of this Settlement Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

18.11   Integration. This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Action, and no representations, warranties or inducements have been made by any Party hereto concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

18.12   Counterparts. This Settlement Agreement may be executed in one or more original and/or faxed counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided, however, that counsel for the signatories of this Settlement Agreement shall exchange among themselves original signed counterparts.

18.13   Facsimile and Electronic Mail. Transmission of a signed Settlement Agreement by facsimile or electronic mail shall constitute receipt of an original signed Settlement Agreement by mail.

18.14   Successors. This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto.

18.15   Governing Law. The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Iowa without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

18.16   Interpretation. Definitions apply to the singular and plural forms of each term defined. Definitions apply to the masculine, feminine, and neuter genders of each term defined. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

18.17   Drafting. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is

Doc ID: 6386f9f34e21f80065a9052528f9a76055ff76b26

the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

18.18    Obligation to Meet and Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other in good faith prior to seeking Court intervention.

18.19    Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

18.20    Contractual Agreement. All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

18.21    No Assignment. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

18.22    Non-Disparagement. Representative Plaintiffs, Class Counsel, M.A. Ford, and M.A. Ford's Counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties and their respective counsel concerning all Released Claims or otherwise discourage any Class Member from filing a valid claim, as well as the litigation of the Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel.

18.23    Authority. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

18.24    Notice. All notices to Class Counsel provided for herein shall be sent by overnight mail and e-mail to:

Doc ID: 6386f91c9ea2193080065a9f6250879e7b355f4d7b626

Lynn Toops
CohenMalad, LLP
One Indiana Square
Suite1400
Indianapolis, IN 46204
ltoops@cohenmalad.com

Raina Borrelli
Strauss Borrelli, PLLC
980 North Michigan Avenue
Suite 1610
Chicago, IL 60611
raina@straussborrelli.com

Leigh S. Montgomery
EKSM, LLP
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
lmontgomery@eksm.com

J. Gerard Stranch, IV
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37211
gstranch@stranchlaw.com

All notices to M.A. Ford provided for herein, shall be sent by overnight mail and e-mail
        to:

H. Nellie Fitzpatrick
Jonathan Tobin
Ciprani & Wener, P.C.
450 Sentry Parkway
Suite 200
Blue Bell, Pennsylvania 19422
nfitzpatrick@c-wlaw.com
jtobin@c-wlaw.com

The notice recipients and addresses designated above may be changed by written notice.

Doc ID: 0db3c3a1cf1d9a9e

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed by themselves or by their authorized counsel:


By: *Robert Hill*                    Date: 12/12/2025
Robert Hill
M.A. Ford Manufacturing, Co. Inc.


By: *Nellie Fitzpatrick*             Date: 12/15/2025
H. Nellie Fitzpatrick
Jonathan Tobin
Cipriani & Werner, P.C.

*Counsel for Defendant M.A. Ford
Manufacturing, Co. Inc.*


By:                                  Date:
Timothy Harter


By:                                  Date: 12 / 12 / 2025
Kevin Hays


By: *Lynn Toops*                     Date: 12/12/2025
Lynn A. Toops
CohenMalad, LLP


By:                                  Date:
Leigh S. Montgomery
EKSM, LLP


By: *Raina Borrelli*                 Date: 12 / 12 / 2025
Raina C. Borrelli
Strauss Borrelli, PLLC

Doc ID: 0db3c3a1cf1d9a9e...

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly
executed by themselves or by their authorized counsel:

By: *Robert Hill*                    Date: 12/12/2025

Robert Hill
M.A. Ford Manufacturing, Co. Inc.

By:_____          Date: _____

H. Nellie Fitzpatrick
Jonathan Tobin
Cipriani & Werner, P.C.

*Counsel for Defendant M.A. Ford*
*Manufacturing, Co. Inc.*

By:_____          Date: _____
                                           Dec 09, 2025

Timothy Harter

By:_____          Date: _____

Kevin Hays

By:_____          Date: _____

Lynn A. Toops
CohenMalad, LLP

By:_____          Date: _____
                                           Dec 9, 2025

Leigh S. Montgomery
EKSM, LLP

By:_____          Date: _____

Raina C. Borrelli
Strauss Borrelli, PLLC

By: _Gerard Stranch_____
Gerard Stranch (12/09/2025 09:52:36 CST)

J. Gerard Stranch, IV
Stranch, Jennings & Garvey, PLLC

*Counsel for Plaintiffs and the Settlement
Class*

Date: _12/09/2025_____

# 2025-12-09 Settlement Agreement - Harter v MA Ford - Final for Execution

Final Audit Report                                                2025-12-09

| | |
|---|---|
| Created: | 2025-12-09 (Central Standard Time) |
| By: | Ryan Hall (rhall@stranchlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxu1SY7yntysy60lK2WzL4Vws5_v5qHI4 |

## "2025-12-09 Settlement Agreement - Harter v MA Ford - Final for Execution" History

Document created by Ryan Hall (rhall@stranchlaw.com)
2025-12-09 - 9:46:41 AM CST

Document emailed to gstranch@stranchlaw.com for signature
2025-12-09 - 9:48:46 AM CST

Email viewed by gstranch@stranchlaw.com
2025-12-09 - 9:52:08 AM CST

Signer gstranch@stranchlaw.com entered name at signing as Gerard Stranch
2025-12-09 - 9:52:34 AM CST

Document e-signed by Gerard Stranch (gstranch@stranchlaw.com)
Signature Date: 2025-12-09 - 9:52:36 AM CST - Time Source: server

Agreement completed.
2025-12-09 - 9:52:36 AM CST

**Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | MA Ford SA |
| **File name** | M.A._Ford___Settl...82_icloud.com.pdf |
| **Document ID** | 61d81d24eddf10ecaa895250e9e7fc959fc7fe6d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document history

|  | | |
|---|---|---|
| **SENT** | **12 / 12 / 2025**<br>09:57:39 UTC-6 | Sent for signature to Raina Borrelli (raina@straussborrelli.com) from esignature@straussborrelli.com<br>IP: 99.90.234.126 |
| **VIEWED** | **12 / 12 / 2025**<br>09:58:25 UTC-6 | Viewed by Raina Borrelli (raina@straussborrelli.com)<br>IP: 99.90.234.126 |
| **SIGNED** | **12 / 12 / 2025**<br>09:58:34 UTC-6 | Signed by Raina Borrelli (raina@straussborrelli.com)<br>IP: 99.90.234.126 |
| **COMPLETED** | **12 / 12 / 2025**<br>09:58:34 UTC-6 | The document has been completed. |

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | M.A. Ford | Settlement Agreement | Kevin Hays |
| **File name** | 2025-12-09_Settle...for_Execution.pdf |
| **Document ID** | 139df916e21980965c90fde28f7a06058f4bcb26 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from embedded.hellosign.com**

## Document history

| | | |
|---|---|---|
| **SENT** | **12 / 10 / 2025**<br>08:44:24 UTC-6 | Sent for signature to Kevin Hays (kevinthays82@icloud.com)<br>from esignature@straussborrelli.com<br>IP: 67.176.225.166 |
| **VIEWED** | **12 / 10 / 2025**<br>18:33:38 UTC-6 | Viewed by Kevin Hays (kevinthays82@icloud.com)<br>IP: 146.75.192.104 |
| **SIGNED** | **12 / 12 / 2025**<br>09:40:43 UTC-6 | Signed by Kevin Hays (kevinthays82@icloud.com)<br>IP: 140.248.30.104 |
| **COMPLETED** | **12 / 12 / 2025**<br>09:40:43 UTC-6 | The document has been completed. |

Doc ID: 61d81d24eddf10ecaa895250e9e7fc959fc7fe6d

# 2025-12-09 Settlement Agreement - Harter v MA Ford - Final for Execution

Final Audit Report                                                2025-12-09

| | |
|---|---|
| Created: | 2025-12-09 |
| By: | Raya Jacob (rjacob@eksm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAPRoCSPV98ae40da4PYvKUqNvOB8qDmRJ |

## "2025-12-09 Settlement Agreement - Harter v MA Ford - Final for Execution" History

📄 Document created by Raya Jacob (rjacob@eksm.com)
   2025-12-09 - 4:28:16 PM GMT

📧 Document emailed to Timothy William Harter (timothyharter1963@gmail.com) for signature
   2025-12-09 - 4:28:22 PM GMT

📄 Email viewed by Timothy William Harter (timothyharter1963@gmail.com)
   2025-12-09 - 4:49:14 PM GMT

✍️ Document e-signed by Timothy William Harter (timothyharter1963@gmail.com)
   Signature Date: 2025-12-09 - 4:59:22 PM GMT - Time Source: server

📧 Document emailed to Leigh Montgomery (Leigh@ellzeylaw.com) for signature
   2025-12-09 - 4:59:23 PM GMT

📄 Email viewed by Leigh Montgomery (Leigh@ellzeylaw.com)
   2025-12-09 - 5:01:18 PM GMT

✍️ Document e-signed by Leigh Montgomery (Leigh@ellzeylaw.com)
   Signature Date: 2025-12-09 - 5:02:39 PM GMT - Time Source: server

✅ Agreement completed.
   2025-12-09 - 5:02:39 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT A

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc.,*
*d/b/a M.A. Ford Manufacturing Company, Inc.*
Case No. 3:24-cv-00056-SMR-SBJ
United States District Court for the Southern District of Iowa

> **IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE DECEMBER 2023 M.A. FORD MANUFACTURING COMPANY DATA SECURITY INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS, AND ENTITLE YOU TO BENEFITS AND A CASH PAYMENT.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc. ("M.A. Ford" or "Defendant") in a class action lawsuit. This case is about the targeted cyberattack on M.A. Ford's computer systems that occurred in December 2023 (the "Data Security Incident"). Certain files that contained private information were accessed. These files may have contained Personally Identifiable Information or "PII".

- The lawsuit is called *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.*, Case No. 3:24-cv-00056-SMR-SBJ. It is pending in the United States District Court for the Southern District of Iowa (the "Litigation").

- M.A. Ford denies that it did anything wrong, and the Court has not decided who is right.

- The parties have agreed to settle the lawsuit (the "Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the Litigation.

- M.A. Ford's records indicate that you are a Class Member, and entitled to benefits under the Settlement. You may have received a previous notice directly from M.A. Ford.

- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits or payments from this Settlement is by submitting a valid and timely Claim Form.<br><br>The fastest way to submit your Claim Form is online at www.MAFordsettlement.com. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **_____, 2025** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no benefit or payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendants related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | **_____, 2025** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for Settlement benefits. | **_____, 2025** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive benefits or payments from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ............................................................................. 3
WHO IS IN THE SETTLEMENT ................................................................. 4
THE SETTLEMENT BENEFITS................................................................. 4
SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS .................. 6
THE LAWYERS REPRESENTING YOU ...................................................... 7
EXCLUDING YOURSELF FROM THE SETTLEMENT ................................. 7
COMMENTING ON OR OBJECTING TO THE SETTLEMENT...................... 8
THE COURT'S FINAL APPROVAL HEARING ............................................. 9
IF I DO NOTHING .................................................................................. 9
GETTING MORE INFORMATION ............................................................. 10

# Basic Information

### 1. Why was this Notice issued?

The United States District Court for the Southern District of Iowa, authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.*, Case No. 3:24-cv-00056-SMR-SBJ. It is pending in the United States District Court for the Southern District of Iowa. The people that filed this lawsuit are called the "Plaintiffs" (or "Class Representatives") and the company they sued, M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc., is called the "Defendant."

### 2. What is this lawsuit about?

This lawsuit alleges that during the December 2023 targeted cyberattack on M.A. Ford's computer systems, certain files that contained private information were accessed. These files may have contained Personally Identifiable Information or "PII".

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt out from the settlement. In this Settlement, the Class Representatives are Timothy Harter and Kevin Hays. Everyone included in this Action are the Class Members.

### 4. Why is there a Settlement?

The Court did not decide whether the Plaintiffs or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Class Members to receive benefits from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Class Members.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com.**

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The court has defined the Class this way: "All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford."

## 6. Are there exceptions to being included?

Yes. Excluded from the Class are: (1) the Judge in this case, and the Judge's family and staff; (2) M.A. Ford and its officers, directors, and related companies; and (3) anyone who validly excludes themselves from the Settlement.

If you are not sure whether you are a Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@MAFordsettlement.com.com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  M.A. Ford Data Security Incident Settlement
            c/o Settlement Administrator
            [PO Box Number]
            Santa Ana, CA 92799-9958

You may also view the Settlement Agreement at www.MAFordsettlement.com.

# The Settlement Benefits

## 7. What does the Settlement provide?

M.A. Ford will establish a Settlement Fund of $425,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. The net remaining money will be used to pay for the benefits described below.

**CREDIT MONITORING**

**CyEx Identity Defense Total.** All Class Members are eligible to enroll in three years of CyEx Identity Defense Total. This comprehensive service comes with $1 million in identity theft insurance, and includes:

- real time monitoring of your credit file
- dark web scanning
- comprehensive public records monitoring

If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

**CASH PAYMENTS**

**Reimbursement for Out-of-Pocket Losses.** If you incurred actual, <u>documented</u> out-of-pocket expenses due to the Data Security Incident, you can get back up to **$500.00**. The losses must have occurred between December 12, 2023, and [<mark>Claims Deadline</mark>].

This benefit covers out-of-pocket expenses like:

- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**Losses from Identity Theft or Fraud.** If you lost money because of identity theft or fraud, you can get back up to **$5,000.00**.

You will need to show that:

- the theft or fraud was probably caused by the Data Security Incident
- the losses are not already covered by **Out-of-Pocket Expenses**
- you tried to prevent the loss or get your money back, such as by using insurance you already have

The losses must have occurred between December 12, 2023, and [<mark>Claims Deadline</mark>].

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**Reimbursement for Attested Time.** Class Members who spent time responding to the Data Security Incident may claim up to five hours, at $25.00 per hour, for a maximum of **$125.00**.

You must have spent the time on tasks related to the Data Security Incident. Some examples include things like:

- changing your passwords
- investigating suspicious activity in your accounts
- researching the Data Security Incident

You must briefly describe how you spent this time.

**Pro Rata Cash Payment.** All Settlement Class Members are also eligible to claim a Pro Rata Cash Payment. The payment amount will be calculated by dividing the Settlement Fund by the number of valid and timely claims.

Settlement Class Members are subject to an individual aggregate cap of $6,000.00 for payments for Out-of-Pocket Losses and Attested Time.

5

Questions? Call 1-<mark>XXX-XXX-XXXX</mark> Toll-Free or Visit www.MAFordsettlement.com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@MAFordsettlement.com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  M.A. Ford Data Security Incident Settlement
      c/o Settlement Administrator
     [PO Box Number]
     Santa Ana, CA 92799-9958

## 8. What claims am I releasing if I stay in the Class?

If you stay in the class, you won't be able to be part of any other lawsuit against M.A. Ford about the issues that this Settlement covers. The "Releases" section of the Settlement Agreement (Section 15) describes the legal claims that you give up if you remain in the Class. The Settlement Agreement is available at www.MAFordsettlement.com.

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at www.MAFordsettlement.com. If you prefer, you can download a printable Claim Form from the website and mail it to the Settlement Administrator at:

M.A. Ford Data Security Incident Settlement
c/o Settlement Administrator
[PO Box Number]
Santa Ana, CA 92799-9958

You may also contact the Settlement Administrator to request a Claim Form by telephone, toll free, 1-XXX-XXX-XXXX, by email info@MAFordsettlement.com, or by U.S. mail at the address above.

## 10. Are there any important Settlement payment deadlines?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, including supporting documentation, must be postmarked no later than [Claims Deadline].

## 11. When will the Settlement benefits be issued?

The Court will hold a final approval hearing on [FA Hearing Date] (*see* **Question 18**). If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Settlement payments will be distributed if the Court grants final approval, and after any appeals are resolved.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com.**

## The Lawyers Representing You

### 12. Do I have a lawyer in the case?

Yes, the Court has appointed attorneys Lynn A. Toops of CohenMalad, LLP; Raina C. Borrelli of Strauss Borrelli PLLC; Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP; and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC, to represent you and other Class Members ("Class Counsel").

### 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

### 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve $141,666.67 as reasonable attorneys' fees and costs of litigation. This amount will be paid from the Settlement Fund.

Class Counsel will also ask for Service Award payments of $2,500.00 for each of the Class Representatives. Service Award payments will also be paid from the Settlement Fund.

## Excluding Yourself from the Settlement

### 15. How do I opt out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called a Request for Exclusion, and is sometimes also called "opting out." If you opt out, you will not receive Settlement benefits or payment. However, you will keep any rights you may have to sue M.A. Ford on your own about the legal issues in this case.

If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you exclude yourself.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

To be valid, your Request for Exclusion must have the following information:

    (1)  the name of the Litigation: *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.*, Case No. 3:24-cv-00056-SMR-SBJ, pending in the United States District Court for the Southern District of Iowa;

    (2)  your full name, mailing address, telephone number, and email address;

    (3)  personal signature; and

    (4)  the words "Request for Exclusion" or a clear and similar statement that you do not want to participate in the Settlement.

You may only exclude yourself—not any other person.

Mail your Request for Exclusion to the Settlement Administrator at:

M.A. Ford Data Security Incident Settlement
ATTN: Exclusion Request
[PO Box Number]
Santa Ana, CA 92799-9958

Your Request for Exclusion must be submitted, postmarked, or emailed by **[Opt-Out Deadline]**.

## Commenting on or Objecting to the Settlement

### 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

You cannot object if you have excluded yourself from the Settlement (*see* Question 15)

You must provide the following information for the Court to consider your objection:

(1)   the name of the Litigation: *Timothy Harter and Kevin Hays v. M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc.*, Case No. 3:24-cv-00056-SMR-SBJ, pending in the United States District Court for the Southern District of Iowa;

(2)   your full name, mailing address, telephone number, and email address;

(3)   a clear description of all the reasons you object; include any legal support, such as documents, you may have for your objection;

(4)   whether the objection applies only to you, or to other Class Members, as well;

(5)   if you have hired your own lawyer to represent you for this objection, provide their name, bar number, and contact information;

(6)   if you or your attoeney plan on attending or submitting documents at the Final Approval Hearing, provide a full list of both;

(7)   your signature (or, if you have hired your own lawyer, your lawyer's signature).

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must file your complete objection with the Clerk of Court by **[OBJECTION DATE]**. You must also send a copy of the objection to the Settlement Administrator.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the Court<br>[Court Address] | M.A. Ford Data Security Incident Settlement<br>ATTN: Objections<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

Questions? Call 1-**XXX-XXX-XXXX** Toll-Free or Visit www.MAFordsettlement.com.

## 17. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

# The Court's Final Approval Hearing

## 18. When is the Court's Final Approval Hearing?

The Court will hold a final approval on **[FA Hearing Date] at [Hearing Time]** Central Time, in Room [Court Room] of the United States District Court for the Southern District of Iowa, at [Court Address].

At the final approval hearing, the Court will decide whether to approve the Settlement. The court will also decide how Class Counsel should be paid, and whether to award Service Award payments to the Class Representatives. The Court will also consider any objections to the Settlement.

If you are a Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (*See* **Question 16**).

The date and time of this hearing may change without further notice. Please check www.MAFordsettlement.com for updates.

## 19. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

# If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

# Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, www.MAFordsettlement.com.

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@MAFordsettlement.com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  M.A. Ford Data Security Incident Settlement
           c/o Settlement Administrator
           [PO Box Number]
           Santa Ana, CA 92799-9958

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court, [Court Address].

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

# EXHIBIT B

M.A. Ford Data Security Incident Settlement
c/o Settlement Administrator
P.O. Box ____
Santa Ana, CA 92799-9958

First-Class
Mail
US Postage
Paid
Permit #__

*Timothy Harter and Kevin Hays v.*
*M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford*
*Manufacturing Company, Inc.*
Case No. 3:24-cv-00056-SMR-SBJ

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE DECEMBER 2023 M.A. FORD MANUFACTURING COMPANY DATA SECURITY INCIDENT,, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS AND ENTITLE YOU TO BENEFITS AND A CASH PAYMENT.**

«Barcode»

Postal Service: Please do not mark barcode

Claim #: XXX- «LoginID» - «MailRec»
«First1» «Last1»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»

*A court has authorized this Notice.*

*This is not a solicitation from a lawyer.*

*You are not being sued.*

THIS NOTICE IS ONLY A SUMMARY.
VISIT WWW.MAFORDSETTLEMENT.COM
OR SCAN THIS QR CODE
FOR COMPLETE INFORMATION.



## Why am I receiving this notice?

A Settlement has been reached with M.A. Ford Mfg. Co., Inc., d/b/a M.A. Ford Manufacturing Company, Inc. ("M.A. Ford") in a class action lawsuit ("Settlement"). The case is about the December 2023 cyberattack on M.A. Ford's computers (the "Data Security Incident"). Files containing private information were accessed. M.A. Ford denies that it did anything wrong, and the Court has not decided who is right. The parties have agreed to settle the lawsuit to avoid the risks, disruption, and uncertainties of continued litigation. A copy of the Settlement is available online.

## Who is included in the Settlement?

The Court has defined the class as: "All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford."

The Court has appointed experienced attorneys, called "Class Counsel," to represent the Class.

## What are the Settlement benefits?

You can claim three years of **Credit Monitoring** by the three credit bureaus and one or more of the **Cash Payment** options.

If you have underlined losses you can get back up to $**500** for out-of-pocket expenses and up to $**5,000** for fraud or identity theft losses. If you spent time fixing problems caused by this incident, you can get back $25/hour for up to five hours (up to $**125**).

All Settlement Class Members are also eligible to claim a Pro Rata Cash Payment. There is $6,000 individual cap on Class Member payments.

Full details and instructions are available online.

## How do I receive a benefit?

If you are claiming out-of-pocket expenses or losses for identity theft/fraud, file all of your claims online. Otherwise, you may fill out the Claim Form below. Tear at perforation, and return by U.S. Mail. Postage is already paid. **Claims must be submitted online or postmarked by [Claims Deadline]**.

## What if I don't want to participate in the Settlement?

If you do not want to be part of the Settlement, you must exclude yourself by **[Opt-Out Deadline]** or you will not be able to sue M.A. Ford for the claims made in *this* lawsuit. If you exclude yourself, you cannot get benefits from this Settlement. If you want to object to the Settlement, you may file an objection by **[Objection Deadline]**. The Settlement Agreement, available online, explains how to exclude yourself or object.

## When will the Court approve the Settlement?

The Court will hold a hearing in this case on **[FA Hearing Date]** at the **[Court Address]**, to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorneys' fees and costs of up to $141,666.67, and $2,500 for each of the Plaintiffs. You may attend the hearing at your own cost, but you do not have to.

---

www.MAFordsettlement.com



**NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES**

**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL    PERMIT NO 47    COSTA MESA CA

POSTAGE WILL BE PAID BY ADDRESSEE

**M.A. Ford Data Security Incident Settlement
  c/o Settlement Administrator
P.O. Box [PO Box Number]
Santa Ana, CA  92799-9958**

《First1》《Last1》
《Addr1》《Addr2》
《City》, 《St》《Zip》

*Complete this Claim Form, tear at perforation, and return by U.S. Mail no later than [Claims Deadline].*

*Only one Claim Form per Class Member.*

Login ID: 《LoginID》
PIN: 《PIN》

**INSTRUCTIONS:** Use this card to submit your claim for three years of **Credit Monitoring**, and/or a **Reimbursement for Attested Time**, and/or a **Pro Rata Cash Payment**.

To claim cash payments for out-of-pocket losses, visit the settlement website at **www.MAFordsettlement.com.** To request a full paper Claim Form, call **1-XXX-XXX-XXXX.**

☐ Check this box to enroll in three years of **Credit Monitoring**.

☐ Check this box to claim a **Reimbursement for Attested Time**.

I spent (select only **one**): ☐ 1 hour ($25)  ☐ 2 hours ($50)  ☐ 3 hours ($75)  ☐ 4 hours ($100)

☐ 5 hour ($125)

☐ Check this box to claim a one-time **Pro Rata Cash Payment**.

How would you like to be paid:
Check *one*: ☐ PayPal ☐ Venmo ☐ Zelle ☐ Virtual Prepaid Card ☐ Check (sent to above address)

For digital payment options, please **PRINT** your email address **LEGIBLY** and doublecheck that it is correct: _____

Notify us if your contact information is different from what is shown above, or changes after submitting this form.

# EXHIBIT C

<table>
<tr><td>

Your claim must
be submitted
online or
postmarked by:
[Claims Deadline]

</td><td>

*«Case_Name»*
Case No. «Case_Number»
«Court»

«DATA_INCIDENT» SETTLEMENT CLAIM FORM

</td><td>

Your claim must
be submitted
online or
postmarked by:
[Claims Deadline]

</td></tr>
</table>

## GENERAL INSTRUCTIONS

**Who is eligible to file a claim?** The court has defined the Class this way: "All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford."

**Excluded from the Settlement Class** are: (1) the Judge in this case, and the Judge's family and staff; (2) M.A. Ford and its officers, directors, and related companies; and (3) anyone who validly excludes themselves from the Settlement.

### COMPLETE THIS CLAIM FORM IF YOU ARE A CLASS MEMBER AND WISH TO RECEIVE ONE OR MORE OF THE FOLLOWING SETTLEMENT BENEFITS

## AVAILABLE BENEFITS

M.A. Ford will establish a Settlement Fund of $425,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. The net remaining money will be used to pay for the benefits described below.

### CREDIT MONITORING

**CyEx Identity Defense Total.** All Class Members are eligible to enroll in three years of CyEx Identity Defense Total. This comprehensive service comes with $1 million in identity theft insurance, and includes:

- real time monitoring of your credit file
- dark web scanning
- comprehensive public records monitoring

If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

### CASH PAYMENTS

**Reimbursement for Out-of-Pocket Losses.** If you incurred actual, <u>documented</u> out-of-pocket expenses due to the Data Security Incident, you can get back up to **$500.00**. The losses must have occurred between December 12, 2023, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com**

*«Case_Name»*
Case No. «Case_Number»
«Court»

**«DATA_INCIDENT» SETTLEMENT CLAIM FORM**

- postage to contact banks by mail

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**Losses from Identity Theft or Fraud.** If you lost money because of identity theft or fraud, you can get back up to **$5,000.00**.

You will need to show that:

- the theft or fraud was probably caused by the Data Security Incident
- the losses are not already covered by **Out-of-Pocket Expenses**
- you tried to prevent the loss or get your money back, such as by using insurance you already have

The losses must have occurred between December 12, 2023, and [Claims Deadline].

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**Reimbursement for Attested Time.** Class Members who spent time responding to the Data Security Incident may claim up to five hours, at $25.00 per hour, for a maximum of **$125.00**.

You must have spent the time on tasks related to the Data Security Incident. Some examples include things like:

- changing your passwords
- investigating suspicious activity in your accounts
- researching the Data Security Incident

You must briefly describe how you spent this time.

Settlement Class Members are subject to an individual aggregate cap of $6,000.00 for payments for Out-of-Pocket Losses and Attested Time.

**Pro Rata Cash Payment.** All Settlement Class Members are also eligible to claim a Pro Rata Cash Payment. The payment amount will be calculated by dividing the Settlement Fund by the number of valid and timely claims.

<table>
<tr>
<td>

**Your claim must be submitted online or postmarked by:**

**[Claims Deadline]**

</td>
<td align="center">

*«Case_Name»*
Case No. «Case_Number»
«Court»

**«DATA_INCIDENT» SETTLEMENT CLAIM FORM**

</td>
<td>

**Your claim must be submitted online or postmarked by:**

**[Claims Deadline]**

</td>
</tr>
</table>

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@MAFordsettlement.com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  M.A. Ford Data Security Incident Settlement
          c/o Settlement Administrator
          [PO Box Number]
          Santa Ana, CA 92799-9958


**THE MOST EFFICIENT WAY TO SUBMIT YOUR CLAIMS IS ONLINE AT
www.MAFordsettlement.com**


You may also print out and complete this Claim Form, and submit it by U.S. mail.

 An electronic image of the completed Claim Form can also be emailed to info@MAFordsettlement.com


**You must submit your Claim Form online, by mail, or by email no later than [Claims Deadline].**


**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com**

<table>
<tr><td>

**Your claim must
be submitted
online or
postmarked by:**

[Claims Deadline]

</td><td>

*«Case_Name»*

Case No. «Case_Number»

«Court»

**«DATA_INCIDENT» SETTLEMENT CLAIM FORM**

</td><td>

**Your claim must
be submitted
online or
postmarked by:**

[Claims Deadline]

</td></tr>
</table>

## I.  CLASS MEMBER NAME AND CONTACT INFORMATION

Print your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this claim form.  All fields are required. **Please print legibly.**

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

Phone Number

Notice ID (if known)

## II.  CYEX IDENTITY DEFENSE TOTAL

☐  Check this box if you would like to enroll in three years of Credit Monitoring by the three credit bureaus.

## III.  REIMBURSEMENT FOR OUT-OF-POCKET LOSSES

☐  Check this box if you would like to claim reimbursement for <u>documented</u> out-of-pocket expenses. You can get back up to $500.00.

*Please complete the table below, describing the supporting documentation you are submitting.*

| *Description of Documentation Provided* | *Amount* |
|---|---|
| *Example: Fee for credit report* | *$40* |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL CLAIMED:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com**

<table>
<tr><td>

**Your claim must
be submitted
online or
postmarked by:**

[**Claims Deadline**]
</td><td>

*«Case_Name»*
Case No. «Case_Number»
«Court»

**«DATA_INCIDENT» SETTLEMENT CLAIM FORM**
</td><td>

**Your claim must
be submitted
online or
postmarked by:**

[**Claims Deadline**]
</td></tr>
</table>

## IV. LOSSES FROM IDENTITY THEFT OR FRAUD

☐ Check this box if you would like to claim reimbursement for <u>documented</u> losses due to identity theft or fraud. You can get back up to $5,000.00.

*Please complete the table below, describing the supporting documentation you are submitting.*

| *Description of Documentation Provided* | *Amount* |
|---|---|
| *Example: Unauthorized bank transfer* | *$500* |
| | |
| | |
| | |
| | |
| | |
| **TOTAL CLAIMED:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

## V. REIMBURSEMENT FOR ATTESTED TIME

If you spent time fixing problems caused by Data Security Incident, please select how many hours (up to five) you spent. You must briefly describe how you spent this time.

I spent (select only **one**):  ☐ 1 hour ($25.00)  ☐ 2 hours ($50.00)  ☐ 3 hours ($75.00)

☐ 4 hours ($100.00)  ☐ 5 hours ($125.00)

Describe what you spent this time on: _____

_____

_____

_____

_____

If you claim Documented Out-of-Pocket Losses and Attested Time (Section III, IV, and V, above), the combined total is capped at $6,000.00

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com**

**Your claim must
be submitted
online or
postmarked by:
[Claims Deadline]**

*«Case_Name»*
Case No. «Case_Number»
«Court»

**Your claim must
be submitted
online or
postmarked by:
[Claims Deadline]**

**«DATA_INCIDENT» SETTLEMENT CLAIM FORM**

---

### VI. PRO RATA CASH PAYMENT

☐  Check this box if you want to claim a Pro Rata Cash Payment.

---

### VII. PAYMENT SELECTION

Please select **one** of the following payment options, which will be used if you are claiming a cash payment.

☐  **PayPal**
Email address, if different than you provided in Section 1:_____

☐  **Venmo**
Mobile number, if different than you provided in Section 1:_____

☐  **Zelle**
Email address or mobile number, if different than you provided in Section 1:_____

☐  **Virtual Prepaid Card**
Email address, if different than you provided in Section 1:_____

☐  **Physical Check**
Payment will be mailed to the address provided in Section 1.

---

### VIII. ATTESTATION & SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form, including supporting documentation, is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.


_____         _____         _____
Signature                                          Printed Name                                          Date


**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.MAFordsettlement.com**

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| TIMOTHY HARTER and KEVIN HAYS, on behalf of themselves and all others similarly situated; <br><br>     *Plaintiffs*, <br><br>     v. <br><br> M. A. FORD MFG. CO., INC. dba M.A. FORD MANUFACTURING COMPANY, INC., an Iowa Corporation, <br><br>     *Defendant*. | Case No.: 3:24-cv-00056-SMR-SBJ |

<u>**PRELIMINARY APPROVAL ORDER**</u>

    Plaintiffs Timothy Harter and Kevin Hays along with Defendant M.A. Ford Manufacturing Company, Inc. (together, "the Parties"), have entered into a proposed Class Action Settlement Agreement (the "Agreement"). Plaintiffs have moved the Court to grant preliminary approval to the Agreement under Federal Rule of Civil Procedure 23(e), to approve the form and method for giving notice of the proposed settlement to the Settlement Class, and to schedule a final approval hearing on the Agreement after the deadlines to object to, or opt out of, the Agreement have passed. Defendant does not oppose the motion.

    **ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.   Terms capitalized herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

    2.   This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Parties.

    3.   The Court finds that the Court will likely be able to certify the proposed Settlement Class for purposes of entry of judgment, defined as:

1

All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford.

4.      Specifically, the Court finds that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) appear to be met:

      a.   The class is so numerous that joinder of all members is impracticable, as there are thousands of Class Members;

      b.   There are questions of law or fact common to the class based upon the claims raised in the lawsuit relating to the Data Security Incident that predominate over questions affecting only individual members, such as whether Defendant breached any duty in failing to protect Class Members' data from unauthorized access;

      c.   The claims of the Class Representatives are typical of the claims of the Settlement Class as they arise from the Data Security Incident;

      d.   The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interests antagonistic to the Settlement Class and Class Counsel are experienced in complex class action litigation; and

      e.   Questions of law or fact common to the Class Members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating this lawsuit, as the same issues relating to duty and breach in relation to the Data Security Incident are substantially the same for all Class Members.

5.      The Court finds that Plaintiffs are adequate Class Representatives and appoints them as such. The Court likewise finds that Lynn A. Toops of Cohen & Malad, LLP; Raina C. Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, and J. Gerard Stranch, IV, of Stranch, Jennings & Garvey, PLLC are competent and appoints them as Class Counsel.

6.      The Court finds that the terms of the Agreement are within the range of a fair, reasonable, and adequate compromise under the circumstances of this case. Specifically, the Court finds that:

(A) the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the Settlement Class appears adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims;

      (iii) the terms of the proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3) (the Parties have identified none); and

(D) the proposal treats Class Members equitably relative to each other.

7.      The Court therefore preliminarily approves the Agreement and directs the Parties to the Agreement to perform and satisfy the terms and conditions that are triggered by such preliminary approval.

8.      The Court likewise approves the form and method of notice provided for in the Agreement and finds that it complies with the applicable rules and the requirements of the Due Process Clause of the United States and Iowa Constitutions ("Due Process"). Specifically, the Court finds that the form and method of notice (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their rights to object to or exclude themselves from the proposed settlement and other rights under the terms of the Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all members of the Settlement Class and other persons entitled to receive notice; (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c); and (e) and meet the requirements of Due Process. The Court further finds that the Notice provided for in the Agreement is written in plain language, uses simple terminology, and is designed to be readily understandable by the Settlement Class.

9.       The Court appoints Simpluris, Inc., as Settlement Administrator and orders the Settlement Administrator and the Parties to implement the notice program set forth in the Settlement.

10.      A final approval hearing (the "Final Approval Hearing") shall be held before the undersigned at _____ o'clock, on _____, 2026, at the U.S. District Courthouse, 131 East 4th Street, Davenport, Iowa, 5280, or via video or teleconference, for the purpose of: (a) determining whether the Settlement Class should be finally certified for entry of judgment on the Agreement; (b) determining whether the Agreement is fair, reasonable, and adequate and should be finally approved; (c) determining whether a Final Approval Order should be entered; and (d) considering Class Counsel's application for an award of attorneys' fees and expenses. The Court may adjourn, continue, and reconvene the Final Approval Hearing pursuant to oral announcement without further notice to the Settlement Class, and the Court may consider and grant final approval of the Agreement, with or without minor modification and without further notice to the Settlement Class.

11.      Members of the Settlement Class shall be afforded an opportunity to request exclusion from the Settlement Class. A request for exclusion from the Settlement Class must comply with the requirements for form and timing set forth in the Detailed Notice included in the Agreement. Members of the Settlement Class who submit a timely and valid request for exclusion shall not participate in and shall not be bound by the Agreement.  Members of the Settlement Class who do not timely and validly opt out of the Settlement Class in accordance with the Detailed Notice shall be bound by all determinations and judgments in the action concerning the Agreement.

12.     Class Members who have not excluded themselves shall be afforded an opportunity to object to the terms of the Agreement.  Any objection must comply with the requirements for form and timing set forth in the Detailed Notice included in the Agreement.

13.     Any Class Member who does not make his or her objection known in the manner provided in the Detailed Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement.

14.     Any request for intervention in this action for purposes of commenting on or objecting to the Agreement must meet the requirements set forth above, including the deadline for filing objections, and also must be accompanied by any evidence, briefs, motions, or other materials the proposed intervenor intends to offer in support of the request for intervention.

15.     Any lawyer intending to appear at the Final Approval Hearing must be authorized to represent a Class Member, must be duly admitted to practice law before this Court, and must file a written appearance.  Copies of the appearance must be served on Class Counsel and counsel for Defendant.

16.     Class Counsel shall file a motion for approval of the attorneys' fees, expenses, and service awards to be paid from the Settlement Fund, along with any supporting materials, on the deadline provided in the Agreement.

17.     If the Agreement does not become effective or is rescinded pursuant to the Agreement, the Agreement and all proceedings had in connection therewith shall be without prejudice to the *status quo ante* rights of the Class Representatives and Defendant, and all Orders issued pursuant to the Agreement shall be vacated.

18.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Agreement.

**SO ORDERED.**

Dated: _____                  _____
                                        Hon. Stephanie M. Rose, Chief District Judge
                                        United States District Court
                                        Southern District of Iowa

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| TIMOTHY HARTER and KEVIN HAYS, on behalf of themselves and all others similarly situated; | |
| *Plaintiffs*, | |
| v. | Case No.: 3:24-cv-00056-SMR-SBJ |
| M. A. FORD MFG. CO., INC. dba M.A. FORD MANUFACTURING COMPANY, INC., an Iowa Corporation, | |
| *Defendant*. | |

## FINAL APPROVAL ORDER

Plaintiffs Timothy Harter and Kevin Hays along with Defendant M.A. Ford Manufacturing Company, Inc. (together, "the Parties"), have entered into a proposed Class Action Settlement Agreement (the "Agreement"). The Court previously granted preliminary approval to the Agreement, notice was issued to the Settlement Class, and the deadlines to opt out or object to the Agreement have now passed. Plaintiffs have moved the Court to grant final approval to the Agreement under Federal Rule of Civil Procedure 23(e). Defendant does not oppose the motion.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.    Terms capitalized herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

2.    This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Parties.

3.    The Court finds that the proposed Settlement Class, defined as follows, meets the requirements for certification for purposes of entry of judgment:

All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford.

4.      Specifically, the Court finds that the requirements of Rule 23(a) and 23(b)(3) are met:

    a.   The class is so numerous that joinder of all members is impracticable, as there are thousands of Class Members;

    b.   There are questions of law or fact common to the class based upon the claims raised in the lawsuit relating to the Data Security Incident that predominate over questions affecting only individual members, such as whether Defendant breached any duty in failing to protect Class Members' data from unauthorized access;

    c.   The claims of the Class Representatives are typical of the claims of the Settlement Class as they arise from the Data Security Incident;

    d.   The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interests antagonistic to the Settlement Class and Class Counsel are experienced in complex class action litigation; and

    e.   Questions of law or fact common to the Class Members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating this lawsuit, as the same issues relating to duty and breach in relation to the Data Security Incident are substantially the same for all Class Members.

5.      The Court therefore certifies the Settlement Class, appoints Plaintiffs as the Class Representatives, and appoints Lynn A. Toops of Cohen & Malad, LLP; Raina C. Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, and J. Gerard Stranch, IV, of Stranch, Jennings & Garvey, PLLC as Class Counsel.

6.      The Court finds that notice of the proposed Agreement was provided to the Settlement Class and that the notice met the requirements of Rule 23 and Due Process.

7.      The Court finds that the terms of the Agreement represent a fair, reasonable, and adequate compromise under the circumstances of this case. Specifically, the Court finds that:

(A) the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the Settlement Class appears adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3) (the Parties have identified none); and

(D) the proposal treats Class Members equitably relative to each other.

8.     The Court therefore grants final approval of the Agreement and directs the Parties to the Agreement to perform and satisfy the terms and conditions that are triggered by such final approval. Specifically, the Court approves the plan for payment of the Net Settlement Fund.

9.     Upon the occurrence of the Effective Date, the Class Representatives and the Class Members, and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities ("Releasing Parties"), release and forever discharge Defendant, M.A. Ford Manufacturing Company, Inc., and all of its respective past, present, and future employees, officers, directors, board members, affiliates, agents, vendors, attorneys, insurers, successors, parent companies, subsidiaries, and shareholders (the "Releasees") from all known and unknown claims, liabilities, rights, demands, suits, matters, obligations, damages, including but not limited to, consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action related to the Data Security Incident of every kind and description, whether known or unknown, and whether in law, in equity, for administrative relief, or otherwise, that the Releasing Persons had, have, or may have against Defendant and/or the Released Persons that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands,

damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the alleged unauthorized access to, theft, exposure, or disclosure of Settlement Class Members' Personal Information; (2) the maintenance and storage of Settlement Class Members' Personal Information; (3) Defendant's information security policies and practices; (4) Defendant's notice of the Data Breach Security Incident to any Settlement Class Member; and (5) policies and procedures otherwise related to the Data Security Incident Breach (the "Released Claims").

10.     Upon the Effective Date: (a) the Agreement shall be the exclusive remedy for any and all Released Claims of the Releasing Parties; and (b) the Releasing Parties shall be permanently barred and enjoined from initiating, asserting, or prosecuting any Released Claim against the Releasees, whether on behalf of Class Representatives, any Class Member, or others, in any jurisdiction.

11.     This Order is a final judgment because it disposes of all claims against all Parties to this lawsuit.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:                                   _____
                                         Hon. Stephanie M. Rose, Chief District Judge
                                         United States District Court
                                         Southern District of Iowa