IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| TIMOTHY HARTER, AND KEVIN HAYS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>M.A. FORD MFG. CO., INC., doing business as M.A. Ford Manufacturing Company, Inc.<br><br>      Defendant. | Case No. 3:24-cv-00056-SMR-SBJ<br><br>ORDER ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS |

Plaintiffs move for final approval of a class action settlement and for an award of attorney's fees, expenses, and service awards.  [ECF Nos. 54, 58].  The Court held a final approval hearing on June 30, 2026, and ordered supplemental briefing.  [ECF No. 62].  Class counsel filed that supplement on July 14, 2026.  [ECF No. 63].  Having reviewed the settlement, the parties' submissions, the class's response, and the record, the Court GRANTS both motions.

## I.    BACKGROUND

This case arises from a data security incident affecting M.A. Ford's network systems. Between December 12 and 14, 2023, an unauthorized actor accessed the network and potentially acquired the personally identifiable information of the company's current and former employees. On May 31, 2024, M.A. Ford notified the affected individuals and the Office of the Maine Attorney General that the information of 4,359 current and former employees may have been accessed.

Timothy Harter filed a class action complaint on July 3, 2024.  [ECF No. 1].  Kevin Hays filed a separate complaint days later, then dismissed it and joined the Harter action.  Plaintiffs filed

1

a consolidated complaint on October 10, 2024, asserting claims for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief. [ECF No. 12]. Defendant moved to dismiss. [ECF No. 25].

Rather than brief the motion, the parties agreed to mediate and exchanged informal discovery about the incident, the affected population, the compromised data, and Defendant's remedial measures. [ECF No. 37]. On August 26, 2025, they mediated before Jill Sperber and reached a resolution, which they finalized in the Settlement Agreement now before the Court.

The Court granted preliminary approval on January 23, 2026. [ECF No. 52]. It provisionally certified a settlement class, appointed the class representatives and class counsel, approved the notice plan, and set a final approval hearing. Notice has issued. The deadlines to opt out and object have closed.

The settlement establishes a $425,000 non-reversionary common fund. Class members could claim three years of three-bureau credit monitoring with three years of identity restoration; up to $500 for documented ordinary out-of-pocket losses or up to $5,000 for documented extraordinary losses; and up to $125 for attested time. Every class member receives a *pro rata* cash payment from the net fund without submitting any claim. Defendant will also implement data security enhancements separately and at its own expense. The fund covers notice and administration costs, court-approved fees and costs, and service awards.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS

The Court provisionally certified the settlement class at preliminary approval, finding numerosity, commonality, typicality, adequacy, predominance, and superiority satisfied under Rule 23(a) and (b)(3). [ECF No. 52 at 2–3]. Nothing has changed. The class remains as certified, and the Court confirms certification for settlement purposes. Because this is a settlement class,

the Court need not consider trial manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (excusing manageability for settlement classes). Joinder of more than 4,000 members would be impracticable in any event. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560–61 (8th Cir. 1982) (affirming numerosity for a 74-member class). The Court finally certifies the following settlement class:

> All individuals who received notice from M.A. Ford that their information may have been compromised as a result of the December 2023 Data Security Incident at M.A. Ford.

Excluded from the class are: (1) the judges presiding over this action and members of their immediate families and staff; (2) Defendant and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant has a controlling interest; (3) persons who timely and properly opted out; and (4) the successors or assigns of any excluded person.

The Court confirms Timothy Harter and Kevin Hays as class representatives. It confirms Lynn A. Toops of CohenMalad, LLP, Raina C. Borrelli of Strauss Borrelli PLLC, Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as class counsel under Rule 23(g). It confirms Simpluris, Inc. as settlement administrator.

## III.    NOTICE

Notice satisfied Rule 23(c)(2)(B) and due process. The administrator mailed direct postcard notice on February 20, 2026, to the 4,125 class members for whom a valid mailing address was available, drawn from a class list of 4,136. [ECF No. 58-2 ¶¶ 5–6]. It skip-traced returned mail and reached an estimated 87.6% of the class. *Id*. ¶ 8. That reach falls within the range courts treat as adequate. The administrator also maintained a settlement website and a toll-free line throughout the notice period. *Id*. ¶¶ 9–11.

The notice fairly apprised class members of the settlement.  It described the benefits, explained how to claim, opt out, object, and appear, stated the deadlines and the hearing date, and disclosed the fee and service-award requests.  Due process requires no more.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (requiring notice reasonably calculated to apprise interested parties and afford an opportunity to object).

Notice under the Class Action Fairness Act was effected on January 28, 2026, when the administrator served the Attorneys General of every state and territory and the United States Attorney General.  [ECF Nos. 58-1; 58-2 ¶ 4].  The 90-day period under 28 U.S.C. § 1715(d) closed before this hearing.  No official filed any objection.

## IV.    FINAL APPROVAL

A class settlement requires a finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  The Rule directs attention to whether the representatives and counsel adequately represented the class, whether the settlement was negotiated at arm's length, whether the relief is adequate, and whether the settlement treats class members equitably.  Courts in this circuit also weigh the merits against the settlement terms, the defendant's financial condition, the complexity and expense of further litigation, and the amount of opposition.  *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (listing factors).  Settlements enjoy a strong presumption of fairness.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (recognizing the presumption).  Each consideration favors approval.

### A.  Adequate Representation and Arm's-Length Negotiation

The class representatives and class counsel adequately represented the class.  The representatives assisted the investigation, reviewed filings, provided documents, and stayed engaged through settlement.  [ECF No. 54-3 ¶ 11].  Class counsel are experienced data-breach

litigators who investigated the claims and analyzed informal discovery before negotiating terms. The negotiations were arm's-length. Counsel deferred any discussion of fees and service awards until the substantive terms were set—a sequence that guards against conflict. The record reveals no collusion.

### B. Adequate Relief

The relief is adequate when weighed against the costs, risks, and delay of continued litigation. Data-breach plaintiffs face real hurdles on standing, causation, and class certification, and success, if it came at all, would follow years of contested litigation and likely appeal. The settlement delivers certain relief now: credit monitoring, reimbursement for documented losses and attested time, an automatic cash payment, and prospective security enhancements that protect every class member. A sure recovery outweighs the prospect of nothing after protracted litigation.

The method of distributing relief is effective. Class members submit a plain-language claim form by mail or online to elect credit monitoring or to seek reimbursement for out-of-pocket losses or attested time. The *pro rata* cash payment requires no claim at all. The Settlement Agreement directs the administrator to pay the net fund *pro rata* "to each Settlement Class Member" after other distributions, and the Agreement's terms control over any contrary implication in the exhibits. [ECF No. 51-2 ¶¶ 5.1, 18.3]. The fund is non-reversionary, and no money returns to Defendant. Only the value of checks left uncashed after issuance and reissuance passes to the residual recipient. *Id*. ¶¶ 5.1, 6.4.

The claims rate does not counsel against approval. As of July 14, 2026, the administrator had received 154 claim forms, of which 146 are valid. [ECF No. 63-1 ¶¶ 4–5]. The mix of elected benefits is immaterial here. Because the cash payment reaches every class member without a claim, and because the fund is non-reversionary and exhausted *pro rata*, a low claims rate raises

each member's recovery rather than stranding funds.  *See Keil v. Lopez*, 862 F.3d 685, 696–97 (8th Cir. 2017) (approving a settlement over a low-claims-rate objection).

The parties have identified Iowa Legal Aid as the non-profit residual recipient.  [ECF No. 63].  The Court approves the designation.  A *cy pres* distribution is proper only for funds that cannot feasibly be redistributed to the class and only to a recipient whose mission reasonably approximates the class's interests.  *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015) (reciting the *cy pres* standard).  Both limits are satisfied.  The Agreement pays every class member *pro rata* before any residual arises, so only true residual—here, near zero—reaches the recipient.  Iowa Legal Aid serves the low-income Iowans, a group that includes this class of an Iowa employer's current and former workers.  The Agreement requires only a court-approved nonprofit for this residual.  [ECF No. 51-2 ¶ 1.27].

### C.  Equitable Treatment

The settlement treats class members equitably.  All members could claim the same menu of benefits, all receive the automatic cash payment, and all benefit from the security enhancements. The structure accounts for differing circumstances without arbitrary distinctions.

### D.  Additional Considerations

The remaining circuit factors align.  Plaintiffs' claims, though colorable, face substantial litigation risk.  Continued litigation would be complex and expensive.  Defendant's financial condition is neutral; the record does not place its ability to pay at issue.  *See Marshall*, 787 F.3d at 512 (treating ability to pay more as neutral).  And the class's response is unanimous acceptance: not one member opted out, and not one objected.  [ECF No. 58-2 ¶¶ 14–17].  That response is strong evidence of fairness.  *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)

(treating minimal opposition as weighing in favor).  The settlement is fair, reasonable, and adequate.  The Court grants final approval.

V.     ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

A court may award reasonable fees and nontaxable costs authorized by the parties' agreement. Fed. R. Civ. P. 23(h).  Courts in this circuit may use the percentage-of-the-fund method or the lodestar method.  *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996); *see In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 858 (8th Cir. 2024) (describing both methods and committing the choice to the district court's discretion).

Class counsel request one-third of the fund.  The request is reasonable.  A one-third award is in line with fees approved in this circuit.  *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming a one-third fee); *Huyer v. Buckley*, 849 F.3d 395, 398–99 (8th Cir. 2017) (same).  The lodestar confirms it.  Counsel reports 266.4 hours at normal rates for a lodestar of $187,157.13, and expects to accrue more as the settlement is administered.  [ECF No. 63 at 4]. The requested award is therefore below counsel's lodestar, yielding a negative multiplier.  A multiplier under one signals that a negotiated fee fairly values the services rendered to the class.

The award honors the terms on which the class was noticed.  The notice and the Agreement cap fees and costs at a combined $141,666.67.  [ECF No. 51-2 ¶ 16.1].  Counsel's request respects that ceiling: it seeks $141,666.67 inclusive of both fees and the $13,455.73 in litigation expenses counsel advanced.  [ECF Nos. 54-1, 63].  The Court awards $141,666.67 in the aggregate, allocated $128,210.94 in fees and $13,455.73 in costs.  The fee component equals 30.2% of the fund.

The service awards are reasonable.  Each representative assisted the investigation, reviewed filings, and remained engaged through settlement, and the parties set the amounts only after agreeing on the class terms.  The Court awards $2,500 to each of the two representatives, for

a total of $5,000—within the range counsel attests is typical and well below the higher awards regularly approved here. *See Caligiuri*, 855 F.3d at 867 (noting that courts in this circuit regularly grant service awards of $10,000 or greater); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

## VI.   DISMISSAL AND RELEASE

The action is dismissed with prejudice and without costs, except as the settlement provides. Upon the Effective Date, each class representative and every settlement class member who did not timely opt out releases the Releasees from all Released Claims, including Unknown Claims. [ECF No. 51-2 ¶¶ 15.1–15.2]. The Released Claims reach only those claims arising from or relating to the Data Security Incident. *Id*. ¶ 1.40.

The class representatives and settlement class members who did not opt out are enjoined from prosecuting any Released Claim against any Releasee. The settlement may be pleaded as a complete defense to any such claim.

## VII.   OTHER PROVISIONS

The Court retains continuing and exclusive jurisdiction over the parties and the settlement class to implement, administer, and enforce the settlement. Nothing in this order or the settlement is an admission or evidence of any liability or wrongdoing by Defendant. If the Effective Date does not occur, this order is void, the parties revert to their positions before the settlement, and neither the settlement nor this order may be used for any purpose.

## VIII.   CONCLUSION

Plaintiffs' Unopposed Motion for Final Approval and Motion for Attorney's Fees, Expenses, and Service Awards are GRANTED. [ECF Nos. 54, 58]. The Court therefore:

1. Certifies the settlement class for settlement purposes;

2. Confirms the appointment of the class representatives, class counsel, and the settlement administrator;

3. Finds that notice satisfied Rule 23(c)(2)(B), due process, and CAFA;

4. Finally approves the settlement as fair, reasonable, and adequate;

5. Awards class counsel $141,666.67 inclusive of fees and costs, allocated $128,210.94 in fees and $13,455.73 in costs;

6. Awards each class representative a $2,500 service award, totaling $5,000;

7. Designates Iowa Legal Aid as the non-profit residual recipient of any net settlement funds remaining after distribution and reissuance of all payments;

8. Dismisses the action with prejudice; and

9. Retains jurisdiction over the settlement's administration and enforcement.

IT IS SO ORDERED.

Dated this 31st day of July, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT